MERRIAM LAW FIRM, P.C.
  Ted Merriam
  Kevin Planegger
  *Pro hac vice applications to be filed*
1625 Broadway, Suite 770
Denver, CO  80202
Telephone: (303) 592-5404
Facsimile: (303) 592-5439

LATHAM & WATKINS LLP
  Steven M. Bauer (Bar No. 135067)
  Margaret A. Tough (Bar No. 218056)
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095
*steven.bauer@lw.com*
*margaret.tough@lw.com*

Attorneys for Plaintiff
JOHN LARSON

E-filing

DMR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CV 11  3093

JOHN LARSON,

            Plaintiff,

      v.

UNITED STATES OF AMERICA,

            Defendant.

CASE NO.

COMPLAINT FOR JUDICIAL REVIEW OF
JEOPARDY ASSESSMENT AND
JEOPARDY LEVY PURSUANT TO 26
U.S.C. SECTION 7429

1    Plaintiff John Larson, through his attorneys, states as follows in his Complaint against the

2    defendant, United States of America:

3    1.    This is a civil action filed pursuant to 26 U.S.C. § 7429(b) for a summary review of a

4    jeopardy assessment and a jeopardy levy made by the Internal Revenue Service ("IRS") on

5    February 7 and 8, 2011 against plaintiff John Larson.  This Court is required to determine, within

6    20 days after commencement of this proceeding, whether or not the making of the assessment

7    was reasonable under the circumstances, whether or not the levy was reasonable under the

8    circumstances, and whether or not the amount of the assessment was appropriate under the

9    circumstances.  26 U.S.C. § 7429(b)(3).  The government bears the burden of demonstrating that

10   the jeopardy assessment and levy were reasonable.

11   2.    **Jurisdiction:**  Jurisdiction is proper before this Court pursuant to 26 U.S.C. §

12   7429(b)(2)(A).

13   3.    **Venue:**  Venue is proper in this District pursuant to 28 U.S.C. 1402(a)(1) because the

14   plaintiff's residence was in this District at all relevant times, although he is currently incarcerated

15   at the La Tuna (FSL) Federal Correctional Institution in El Paso, Texas.

16   4.    **Intradistrict Assignment:**  At the times operative to this complaint, plaintiff resided

17   and worked in San Francisco.

**FACTUAL BACKGROUND**

18

19   5.    In approximately 2002, the IRS initiated an audit into Mr. Larson's federal tax

20   returns.  His individual returns for the years 1998, 1999, 2000 and 2001 are currently under

21   audit; his returns for subsequent years are not.  In the approximately nine years that he has been

22   under audit, at the request of the IRS, Mr. Larson has annually signed IRS Forms 872 to

23   voluntarily extend the general three-year statute of limitations on the assessment of additional

24   tax.  These extensions remain in effect.

25   6.    Mr. Larson's income tax liabilities are also at issue in two TEFRA (the Tax Equity

26   and Fiscal Responsibility Act of 1982) proceedings currently being litigated in the United States

27   Court of Federal Claims, which cases were filed in 2005.

28   7.    In 2005, Mr. Larson was charged, along with 18 others, with a tax evasion conspiracy

1   in the Southern District of New York related to the promotion of three alleged tax shelters:

2   "FLIP," "OPIS," and "BLIPS." Most of his co-defendants were dismissed before trial when the

3   District Court, in a decision affirmed by the Second Circuit Court of Appeals, held that the

4   government prosecutors had engaged in unconstitutional misconduct. *United States v. Stein*, 495

5   F. Supp. 2d 390 (SDNY 2007), affirmed at 541 F. 3d 130 (2d Cir. 2008). The court denied Mr.

6   Larson the benefit of that ruling, and Mr. Larson went to trial in the fall of 2008.

7       8.   The jury returned its verdict on December 17, 2008, acquitting Mr. Larson on the

8   conspiracy charge that dominated the presentation of evidence at trial, and all of the counts

9   related to "FLIP" and "OPIS," but finding him guilty of tax evasion related to 12 BLIPS-related

10  counts.

11      9.   Before he was sentenced, Mr. Larson provided the District Court (and the

12  government) with detailed information about his assets – in the United States and overseas – and

13  his financial status.

14      10.  On April 1, 2009, Mr. Larson was sentenced to 121 months in prison and was fined

15  $6,000,000. Mr. Larson was immediately remanded into custody and has been imprisoned since

16  that date. He timely paid the $6,000,000 fine on July 30, 2009.

17      11.  In a published opinion issued on August 27, 2010, the United States Court of Appeals

18  for the Second Circuit held that the District Court had improperly imposed a fine that exceeded

19  the statutory maximum of $3,000,000, vacated the fine and remanded the case for further

20  proceedings. The court simultaneously affirmed the conviction and remainder of Mr. Larson's

21  sentence in a separate, unpublished summary order. A petition for rehearing en banc was denied

22  on November 23, 2010.

23      12.  The United States District Court for the Southern District of New York has not taken

24  any further action on this remanded issue and no proceedings are scheduled at this time.

25      13.  A petition for writ of certiorari is currently pending before the Supreme Court of the

26  United States.

27      14.  Throughout the years, the IRS revenue agent assigned to Mr. Larson's audit was in

28  regular communication with Mr. Larson's counsel and repeatedly confirmed that the audit of Mr.

1   Larson's tax returns remained on hold while the criminal case and subsequent appeals were

2   litigated. At the agent's request, as noted above, Mr. Larson has annually agreed to extend the

3   statute of limitations. These extensions remain in effect.

4                              **THE INSTANT PROCEEDINGS**

5          15. On February 7, 2011, without warning to either Mr. Larson or his counsel (and in

6   direct contravention of a conversation with Mr. Larson's counsel on February 1, in which the

7   IRS denied that it was in the process of pursuing a jeopardy assessment), the IRS issued a Notice

8   of Jeopardy Assessment and Right of Appeal ("Assessment Notice"). According to the

9   Assessment Notice, the IRS determined that Mr. Larson was "concealing and/or dissipating [his]

10  assets thereby tending to prejudice or render ineffectual collection of income tax for the taxable

11  years 1998, 1999, 2000, and 2001." The IRS thus made a jeopardy assessment against him

12  pursuant to 26 U.S.C. § 6861 for alleged taxes and interest owed for the taxable years 1998,

13  1999, 2000, and 2001. A true and correct copy of the Assessment Notice is attached as Exhibit

14  1.

15         16. The Assessment Notice set forth individual tax assessments of $1,755,379 for 1998,

16  $5,814,159 for 1999, $2,161,275 for 2000, and $1,250,626 for 2001, totaling $10,981,439 in

17  alleged taxes owed. The Assessment Notice set forth individual interest assessments of

18  $1,905,412.10 for 1998, $5,372,634.91 for 1999, $1,641,508.20 for 2000, and $802,739.73 for

19  2001, totaling $9,722,294.94 of alleged interest owed.

20         17. The majority of the adjustments made by the IRS that resulted in the tax and interest

21  assessments set forth in the Assessment Notice were based on a dispute between Mr. Larson and

22  the IRS as to the appropriate timing for him to have reported certain income; not whether he

23  failed to report the income at all. In fact, Mr. Larson reported and paid all required taxes on over

24  $30,000,000 of income in the ten-year period from 1998 through 2007. Furthermore, the alleged

25  adjustments to income proposed by the IRS include partnership adjustments that are currently

26  (and appropriately) being litigated in the Court of Federal Claims.

27         18. Nonetheless, on February 7, 2011, the IRS assessed the aforementioned tax and

28  interest amounts according to the IRS's records of Mr. Larson's 1998, 1999, 2000, and 2001

1  income tax accounts.  True and correct copies of these transcripts are attached as Exhibit 2.

2      19.  On February 8, 2011, the IRS issued a Notice of Jeopardy Levy and Right of Appeal

3  ("Levy Notice").  According to the Levy Notice, the IRS found that Mr. Larson "*may* be

4  concealing, dissipating, or transferring assets overseas, thereby putting [the government's]

5  collection" of income tax "in jeopardy."  Levy Notice at 1 (emphasis added).  A true and correct

6  copy of the IRS's Levy Notice is attached as Exhibit 3.

7      20.  The levy itself was served on Ruby Krajick, Clerk of the Court for the United States

8  District Court for the Southern District of New York.  With the levy, the IRS seeks to seize the

9  expected return of $3,000,000 of Mr. Larson's criminal fine that the appellate court found was

10  improperly imposed.

11      21.  Mr. Larson timely sought an administrative review of the assessment and the levy by

12  filing an Appeal/Protest of the Jeopardy Assessment and Levy ("Protest") with the IRS on March

13  9, 2011.  A true and correct copy of the Protest is attached as Exhibit 4.  Sixteen days passed

14  without any determination from the IRS Appeals Office with respect to Mr. Larson's Protest.

15  Accordingly, Mr. Larson exhausted his administrative remedies and this Court has jurisdiction

16  pursuant to 26 U.S.C. § 7429(b)(1)(B).

17      22.  In a letter dated April 18, 2011, with no discussion of the underlying facts, IRS

18  Appeals Officer Jim Hockett noted that the parties "did not reach a basis for settlement" and

19  summarily concluded the administrative review.  A true and correct copy of Mr. Hockett's April

20  18, 2011 letter is attached as Exhibit 5.

21  **THE GOVERNMENT CANNOT ESTABLISH THAT ANY OF THE REQUISITE**

22  **CONDITIONS TO LEVY THE EXPECTED $3 MILLION EXISTS**

23      23.  Jeopardy assessments and jeopardy levies – such as those imposed by the IRS here –

24  are extraordinary measures that bypass the established due process protections provided to

25  taxpayers by Congress.  The IRS may only make an immediate assessment of tax if "the

26  assessment or collection of a deficiency . . . will be jeopardized by delay."  26 U.S.C. § 6861.

27  Similarly, the IRS is only excused from following established due process procedures in issuing

28  a levy if "the collection of such tax is in jeopardy."  26 U.S.C. § 6331.

1    24.  A jeopardy assessment may thus only be made under certain limited conditions

2  provided in Regulations promulgated by the United States Treasury to interpret the Internal

3  Revenue Code.  Specifically, Treasury Regulation § 301.6861-1 provides that a jeopardy

4  assessment is appropriate "if collection is determined to be in jeopardy because at least one of

5  the conditions described in Treas. Reg. § 301.6851-1(a)(1)(i), (ii), or (iii) (relating to termination

6  assessments) exists."

7    25.  The conditions described in Treas. Reg. § 301.6851-1(a)(1)(i), (ii), or (iii) are limited

8  to the following:

9         A termination assessment will be made if collection is determined

10        to be in jeopardy because at least one of the following conditions

11        exists:

12        (i) The taxpayer is or appears to be designing quickly to depart

13        from the United States or to conceal himself or herself;

14        (ii) The taxpayer is or appears to be designing quickly to place his,

15        her or its property beyond the reach of the Government either by

16        removing it from the United States, by concealing it, by dissipating

17        it, or by transferring it to other persons; or

18        (iii) The Taxpayer's financial solvency is or appears to be

19        imperiled.

20    26.  The three conditions set forth in Treas. Reg. § 301.6851-1(a)(1)(i), (ii), or (iii) are the

21  exclusive conditions upon which a jeopardy assessment and/or a jeopardy levy can be made.

22  *McWilliams v. Commissioner,* 103 TC 416 (1994).

23    27.  None of the three prerequisites to a jeopardy assessment or jeopardy levy is present

24  here.

25    28.  First, the government concedes that "Mr. Larson is currently not a flight risk since

26  he is incarcerated in federal prison and is expected to remain there for 9 years."  Assessment

27  Notice at 2.  Mr. Larson is currently living at the federal correctional institution (FSL La Tuna)

28  in El Paso, Texas, and has been in the government's custody for more than two years.

1   Accordingly, there is no rational argument that Mr. Larson is a flight risk or that he is "designing

2   to leave the United States or to conceal himself."

3        29.    Second, the IRS contends that the jeopardy assessment/levy is justified because

4   Mr. Larson "is or appears to be designing to quickly place his property beyond the reach of the

5   government either by removing it from the United States, by concealing it, by dissipating it, or

6   by transferring it to other persons" under the second prong. *Id.* at 3. Nowhere does the

7   government explain how it has concluded that Mr. Larson intends to "quickly" put his property

8   beyond the reach of the government, nor could it. Mr. Larson timely paid his criminal fine and

9   has never concealed or improperly dissipated any assets. To the contrary, Mr. Larson has

10   consistently filed all necessary disclosure forms for foreign trusts and/or foreign bank accounts,

11   as the IRS well knows. *See, e.g.*, Assessment Notice at 5 ("Mr. Larson acknowledged his

12   interests in foreign accounts and/or trusts ... on his 1997 personal income tax return and ... on

13   his 2000 through 2005 personal income tax returns.") He has not concealed assets, and he has

14   directly informed the district court, the government and IRS/United States Treasury of his

15   foreign interests. Indeed, the IRS noted this in the Assessment Notice, stating that the district

16   court "reviewed the terms of Larson's trust documents for his trusts located in Guernsey." *Id.* at

17   4.

18        30.    The third, and only, remaining condition for a jeopardy assessment and/or levy is

19   that the taxpayer is insolvent or that solvency is imperiled. That is not the case here, as the

20   government concedes ("[a]t this time, the Internal Revenue Service has not established that Mr.

21   Larson is insolvent.") *Id.* at 6. Mr. Larson retains significant assets and the IRS itself agrees that

22   he has been paying his mortgage "and, thus, appears to have sufficient assets to pay his

23   expenses." *Id.* Moreover, he is likely to receive a $3,000,000 return of the portion of the fine he

24   paid following the excessive fine ruling by the United States Court of Appeals for the Second

25   Circuit. His only significant liability is the mortgage on a New York City apartment, and the

26   value of the apartment exceeds the mortgage by at least $750,000 according the IRS's valuation.

27   The Assessment Notice lists other liabilities, including a $10,000 penalty for failing to report

28   control over a foreign bank account. Mr. Larson was not aware of the penalty assessment at the

1   time of the Assessment Notice, but he has since paid the penalty in full.  Finally, the IRS

2   suggests that he may become insolvent "due primarily to the fact that he has 14 civil lawsuits

3   pending against him, and may face additional lawsuits." *Id.* at 6.  In fact, all civil suits naming

4   Mr. Larson personally have been resolved.

5        31.    Other factors cited by courts to consider in determining the reasonableness of a

6   jeopardy assessment provide further support for a finding that the IRS did not act reasonably in

7   this case.  First, Mr. Larson was not involved in a business venture/activity that generated large

8   amounts of cash.  Second, his tax returns at issue (1998 – 2001) reported high levels of income;

9   the primary audit dispute with the IRS relates to the timing of the reporting of certain income,

10  not the failure to report income altogether.  Third, there has been no dissipation of assets.  Mr.

11  Larson has made expenditures for attorneys' fees and living expenses, but even when taxpayers

12  have a potential outstanding tax liability, they have the right to continue paying living expenses,

13  and attorney's and accountant's fees.  Fourth, as set forth above, Mr. Larson remains solvent and

14  he maintains assets from which a potential tax liability can be collected.  Fifth, Mr. Larson has

15  not used aliases making it difficult to locate either the taxpayer or any of his assets.  Again, he is

16  incarcerated in federal prison.  The government knows exactly where he is, as he is in its

17  custody.  Finally, he has not failed to supply appropriate financial information when requested.

18  He disclosed all assets and liabilities during the sentencing phase of his criminal trial, including

19  many forms previously filed with the IRS.   All of these court-cited factors weigh in favor of a

20  finding that the government's jeopardy assessment and levy action was not reasonable here.

21  **THE AMOUNT OF TAX AND INTEREST ASSESSED WAS GROSSLY INFLATED**

22        32.    In addition to the impropriety of the assessment and levy as a matter of law, the

23  amount of the tax and interest assessed by the IRS is not appropriate under the circumstances.  In

24  the Assessment Notice, the IRS alleges that Mr. Larson has "significantly" underreported his

25  income for the 1998, 1999, 2000 and 2001 tax years, and has assessed tax and interest totaling

26  over $20,000,000 for the four tax years at issue.  The alleged adjustments to income proposed by

27  IRS include partnership adjustments that are currently (and appropriately) being litigated in the

28  United States Court of Federal Claims.  These items must be litigated at the partnership level

1  pursuant to TEFRA (the Tax Equity and Fiscal Responsibility Act of 1982); it is premature and

2  inappropriate to make these proposed adjustments directly to Mr. Larson's returns. Furthermore,

3  the alleged adjustments also include income items that were correctly reported by Mr. Larson on

4  his federal income tax returns in subsequent years. Thus, the majority of the adjustments made

5  by the IRS were based on a dispute between Mr. Larson and the IRS as to the appropriate timing

6  for him to have reported certain income; not whether he failed to report the income at all. Even

7  assuming that all disputed factual and legal issues are ultimately decided in the government's

8  favor, the IRS's $20,000,000 assessment is wildly inflated and ignores subsequent correlative

9  adjustments that would be necessary to avoid double taxation of the same amounts of income.

10      33. Mr. Larson is also entitled to the interest abatement provision of 26 U.S.C. § 6404(g)

11  that generally provides for the suspension of interest when the IRS fails to notify a taxpayer of

12  the taxpayer's specific tax liability within 18 months of the filing of his/her tax return.

13  Accordingly, the IRS's assessment of interest in the total amount of $9,722,294.94 is also

14  demonstrably incorrect, and therefore, not allowable.

## CLAIM FOR RELIEF

16      34. The jeopardy assessment and levy in this case are illegal and invalid.

17      35. The government cannot meet its burden of proof, as set forth in 26 U.S.C. § 7429(g),

18  to establish that the jeopardy assessment and levy are reasonable.

19      36. The individual jeopardy assessments made on February 7, 2011 should be abated in

20  full, and the levy served on February 8, 2011 should be released.

21      37. The amount of the individual tax and interest assessments are inappropriate under the

22  circumstances and should be abated in full; Mr. Larson should be allowed to contest these

23  alleged liabilities in the United States Tax Court without threat of immediate government

24  seizure.

25      WHEREFORE, Plaintiff John Larson prays that this Court enter judgment in his favor;

26  determine that the assessment made against him was not reasonable under the circumstances;

27  determine that the amounts of the individual tax and interest assessments were not appropriate

28  under the circumstances; and order the defendant to abate each assessment in full and to release

1  all liens and levies currently in force; and to grant such other and further relief as the Court

2  deems just and proper.

3

4  Dated:  June 23, 2011                              Respectfully submitted,

5                                                     LATHAM & WATKINS LLP
                                                       Steven M. Bauer
6                                                      Margaret A. Tough

7

8                                                     By _Margaret A. Tough_  AMG
9                                                        Margaret A. Tough
                                                         Attorneys for Plaintiff
10                                                       John Larson

11

12                                                    MERRIAM LAW FIRM, P.C.
                                                       Ted Merriam
                                                       Kevin Planegger
13                                                     *Pro hac vice applications to be filed*

14

15                                                    By _Kevin Planegger_  AMG
                                                         Kevin Planegger
16                                                       Attorneys for Plaintiff
                                                         John Larson

17

18

19  SF\862057.3

20

21

22

23

24

25

26

27

28

# EXHIBIT 1



**DEPARTMENT OF THE TREASURY**
INTERNAL REVENUE SERVICE
WASHINGTON, D.C. 20224

RECEIVED
FEB 1 1 2011
THM, PC

**John M. Larson**

**Inmate No. 58201054**

**FCI La Tuna**

**Federal Correctional Institution**

**Federal Satellite Low**
**Post Office Box 6000**
**Anthony, Texas 88021**

**Date:** February 7, 2011

**Taxpayer Identification Number:** REDACTED 2112

**Form:** 1040

**Person to Contact:** John W. Joseph

**Telephone Number:** (303) 603-4756

**Employee I. D. Number:** 1000227359

**Refer Reply To:** John W. Joseph

**Last Date to File for Administrative Review:**
March 9, 2011

# NOTICE OF JEOPARDY ASSESSMENT AND RIGHT OF APPEAL

Dear Mr. Larson:

Under section 6861 of the Internal Revenue Code, you are notified that I have found you to be concealing and/or dissipating your assets thereby tending to prejudice or render ineffectual collection of income tax for the taxable years 1998, 1999, 2000 and 2001.

In particular our investigations have revealed:

You failed to report substantial amounts of income for taxable years 1998, 1999, 2000 and 2001 earned from your tax shelter promotion activities.

You sheltered the income earned from these tax shelter promotions by engaging in a series of abusive tax avoidance transactions similar to those described in Notice 2002-21 as custom adjustable rate debt, or CARD, shelters, basis shift shelters described in Notice 2001-45 as offshore portfolio investment strategy, or OPIS, foreign leveraged investment program, or FLIP, and bond linked issue premium structures, or BLIPS, described in Notice 2000-44 (see Exhibit 1).

You moved the earnings you received beyond the reach of the U.S. government by transferring money to foreign trust(s) located in Guernsey, Channel Islands.
You have not made any efforts to repatriate the funds currently deposited in foreign bank accounts back to the United States in order to pay federal income taxes due and owing.

1

Accordingly, as discussed in greater detail below, we believe that the assessment and collection of your income tax deficiencies with respect to the 1998, 1999, 2000, and 2001 tax years is in jeopardy under I.R.C. § 6861.

## I. FACTORS ESTABLISHING FLIGHT RISK

Mr. Larson is currently not a flight risk since he is incarcerated in a federal prison and is expected to remain there for 9 years. [1]  Although Mr. Larson has been imprisoned, his assets are not physically constrained. In today's financial world, the movement of cash is done electronically rather than physically. Mr. Larson has the means, knowledge, and expertise to transfer assets to foreign accounts to keep them out of the reach of the potential creditors and the United States Government. He has already shown that he is capable of moving monies offshore. As stated by The Honorable Lewis A. Kaplan, District Judge, during Larson's sentencing hearing that,

> " The defendant, given the relationship that was shown at trial with the Norwegians [2], I think quite possibly has access to substantial resources abroad in the hands of others. Certainly Mr. Larson has direct access. There are millions of dollars in the Converse Trust sitting on the Isle of Guernsey. He has the power

---

[1]  Larson, along with other defendants, was tried in a criminal case called "the largest criminal tax case in American history," Stein v. KPMG, LLP, 486 F.3d 753 (2d Cir. 2007). On December 17, 2008, following trial, Larson was convicted of twelve counts of tax evasion under 26 U.S.C.§ 7201, stemming from his involvement in the design, implementation, and marketing of tax shelters. The jury, however, made no findings regarding the amount of pecuniary loss caused or gain derived, by Larson through his crimes. On April 1, 2009, the district court conducted a sentencing hearing at which the judge found that Larson had caused a "gross pecuniary loss (in) exce(ss) (of) $100 million and that the maximum fine therefore exceeds…$200 million." The district court subsequently fined Larson $6 million and sentenced him to 121 months imprisonment.

Larson appealed the District Court's findings to the United States Court of Appeals for the Second Circuit (Second Circuit). The Second Circuit ruled to sustain the conviction, but determined that the amount of the fine, $6,000,000, was twice as large as was permitted by law. United States v. Pfaff, 619 F.3d 172 (2d Cir. 2010). The conclusion of the Second Circuit was to VACATE Larson's fine and REMAND the case back to the district court for further proceedings not inconsistent with this opinion.

[2]  The reference to "the Norwegians" refers to at least four foreign nationals and associates of Larson and Pfaff, specifically Lars Christianson, Helge Vilhelmsen, Nils Hilstadt and Odd Ekholt. Lars Christianson participated in the Son of Boss shelter in the years 1997 and 1998 with Larson and Pfaff. Helge Vilhelmsen participated with Larson and Pfaff in the CARD shelter (Notice 2002-21) through his single member LLC - Helminvest Resources established in May 1998. Helge Vilhelmsen and Nils Hilstadt participated in the BLIPS/BLIPS-like transactions through their 100% ownership (prior to year 1997) in a C corporation, Norwood (in 2000 Norwood changed its name to Norvest Ltd and Subsidiaries). In 1997 Pfaff and Larson each obtained a 20% interest in Norwood. In January 2001 Pfaff, Larson, and their two Norwegian co-owners, Helge Vilhelmsen and Nils Hilstadt, sold their stock in Norvest to Robles Enterprises, Inc. Thus the ownership of Norvest went off-shore. Odd Ekholt participated in the BLIPS/BLIPS-like transactions through Andromeda Ventures Inc., which was owned by Robles Enterprises Inc., which was, in turn, owned by Odd Ekholt.

under Article 1.2 of the trust instrument to designate the entire principal to go to, among other people, his sister Ann Malnor."

Mr. Larson is a sophisticated taxpayer. He had previously lived in London for many years and had many overseas contacts. He has knowledge of international tax laws and the ability to move assets off-shore quickly and efficiently. He has made contacts in other countries and these contacts, as in the past, could be used to help him structure transactions in order to move cash assets offshore.

## II. FACTORS ESTABLISHING CONCEALMENT OR TRANSFER OF ASSETS

It is the position of the Internal Revenue Service that Larson is or appears to be designing to quickly place his property beyond the reach of the government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons, under Treas. Reg. § 301.6861-1(a) and Treas. Reg. § 301.6851-1(a)(1)(ii).

### A. The Honorable Lewis A. Kaplan, District Judge, Sentencing Hearing Findings

During the sentencing hearing the Honorable Lewis A. Kaplan, District Judge found that after the Internal Revenue Service issued Notice 2000-44, Larson took  money earned from his tax shelter activities and transferred it into the trusts located in Guernsey to put them beyond the reach of the government and other creditors. Judge Kaplan indicated that Larson "transferred millions of dollars to the Channel Islands trusts in the Island of Guernsey after the IRS issued Notice 2000-44, and thus, when the handwriting was on the wall that he was going to be facing at an absolute minimum a mass of civil litigation, and quite likely a serious threat of criminal prosecution. This was a brazen act." Moreover, Judge Kaplan stated: "If you transfer the money for the purpose of hindering creditors, past, present or future, it's fraudulent."

Judge Kaplan found that Larson was a flight risk because he had two potential sources of funds abroad: the Norwegian individuals, and the trusts (including the Converse Trust) located in Guernsey. Judge Kaplan stated on the record at sentencing that he was imposing a longer sentence on Larson than on another defendant, Robert Pfaff, in large part because Larson sent his money abroad after Notice 2000-44 to hide it from potential civil litigants suing him in connection with their failed tax shelters, but also because of the criminal prosecution. This finding, in itself, should influence any court in the future about the importance of Judge Kaplan's findings-resulting in not only incarceration pending sentence, but also a longer jail sentence.

The judge also found that Larson engaged in concealment, that is, he engaged in concealment of the true nature of the tax shelters that he promoted and sold.

The judge found that Larson earned "millions and millions of dollars" in his role as an organizer and leader of the shelter transactions. The judge noted that Larson transferred

3

"a substantial portion of the assets into the trusts ... after the issuance of Notice 2000-44,"

Judge Kaplan reviewed the terms of Larson's trust documents for his trusts located in Guernsey, and determined that Larson could direct transfers of money from his trusts, at least to his relatives.

### B. Larson' Present Situation

#### 1. Larson's Filings of Personal Federal Income Tax Returns

Larson has filed personal federal income tax returns for the following years: 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008 and 2009. Larson paid the taxes reported on the returns. However, Larson has significantly underreported his income for the 1998, 1999, 2000, and 2001 years, and has not filed amended returns, despite the fact that the transactions he engaged in are the tax shelters for which he was convicted. Larson's personal federal income tax returns for the years 1998, 1999, 2000 & 2001 are currently under audit and the subject of this jeopardy assessment recommendation. Larson's personal federal income tax returns for the years 2002 through 2009 are not currently under audit.

#### 2. Concealment of Overseas Accounts

Larson maintains control over at least one foreign trust containing large sums of funds that he has not only concealed from creditors, including the Internal Revenue Service, but also put beyond the reach of creditors. Trusts located in Guernsey include, but are not limited to, the Converse, Traverse and/or Concorde Trusts.

The 2009 IRP (Information Return Program is a computer program used by IRS to match amounts, including income, reported by payor/payee) information provided to the Internal Revenue Service by Rothschild Bank International Limited indicates that Larson has at least eight (8) accounts in various Rothschild financial institutions in three (3) countries. The IRP documents report as follows:
- N M Rothschild & Sons-Jayland Services L, two (2) accounts, located in Country Code XV (Nunavut, Canada)
- N M Rothschild & Sons-Jayland Services located in XV
- Rothschild Bank International Limited located in XV
- Rothschild Bank International Limited located in XV
- Rothschild Bank Switzerland located in XV
- Rothschild Bank International Limited located in Country Code GK (Guernsey)
- Rothschild Bank International Limited located in Country Code GV (Republic of Guinea)

4

Larson was assessed a penalty of $10,000 for failing to disclose to the Internal Revenue Service his interest in foreign bank accounts in the 2006 year (referred to as an "FBAR Penalty"), as he was required to do. This FBAR penalty is still unpaid.

Mr. Larson acknowledged his interests in foreign accounts and/or trusts in the Cayman Islands on his 1997 personal income tax return and his interests in foreign accounts and/or trusts in Guernsey, Channel Islands on his 2000 through 2005 personal income tax returns.

### 3. Ability to transfer assets

It is the Internal Revenue Service's opinion that when Larson receives a refund of his fine, which we believe will be approximately $3,000,000 based upon the findings of the 2nd Circuit, he may move these funds into trust accounts located overseas. Larson in the past has moved large sums into his trust accounts overseas. Additionally, Larson has both the knowledge and wherewithal to set up offshore entities and accounts, and to move (or cause to be moved) the funds offshore either to a foreign individual, such as one of his former partners or friends living in Norway, or into his foreign tax haven country trust account. The funds would then be beyond the reach of creditors including the Internal Revenue Service. The Internal Revenue Service bases this opinion upon information supplied by Mr. Makov and Larson's past actions of moving money into trust accounts on the Island of Guernsey for the stated reason of putting the money beyond the reach of the U.S. government and creditors.

Other items considered by the Internal Revenue Service that support a finding that Larson has the current ability and inclination to transfer assets beyond the reach of the U.S. government are:

1. Larson earned millions of dollars off the illegal activity (i.e., tax shelter promotions).
2. Larson did not report all or the income he received from the illegal activity in the 1998-2001 years on his returns.
3. Larson entered into abusive tax shelters, listed transactions, to reduce his personal income tax liability.
4. Larson has been convicted of the illegal activity.
5. Larson's counsel denied that Larson will have any tax liability from the tax shelters that he engaged in, and to date, Larson has not amended his earlier tax returns to reflect his unreported income.
6. Larson has in the past moved large sums of money into offshore trust accounts, even when he knew that he may face liabilities in the U.S. from creditors, including the Internal Revenue Service. The judge deemed these acts to be "brazen".
7. The fact that the foreign trust and bank accounts may still be open and he may be able send the money overseas, even while incarcerated.
8. Larson has significant personal overseas contacts who may be able to help him put the money out of the reach of the Internal Revenue Service.

9. Larson has been paying his mortgage and property taxes on his New York City Condominium and, thus, appears to have sufficient assets to pay his expenses.

10. Larson has not paid his assessed F-BAR penalty.

### 4. Exigency

Larson is expected to receive shortly a repayment of approximately $3,000,000 of the criminal fine that he paid upon his conviction.

## III. FACTORS ESTABLISHING INSOLVENCY

At this time, the Internal Revenue Service has not established that Larson is insolvent. However, the Internal Revenue Service believes that Larson may become insolvent, due primarily to the fact that he has 14 civil lawsuits pending against him, and may face additional lawsuits. A review of Larson's currently known financial information follows.

### A. ASSETS:

1. Apartment in New York City:
   VALUE $1,500,000 - $1,600,000; MORTGAGE $725,000

2. District Court Fine Reimbursement: $3,000,000

3. Mr. Larson reported in his 2009 Individual Federal Income Tax Return taxable and tax exempt interest income of $24,513 and $78,924, respectively, and ordinary dividends of $9,939 indicating that Mr. Larson has financial investments.

### B. LIABILITIES:

1. Assessments currently due and owing to the United States Department of Treasury:
   Larson currently owes the United States Department of the Treasury $10,000 for failing to report to the Internal Revenue Service on his 2006 Individual Federal Income Tax Return that he had control over foreign bank accounts .

2. Promoter Penalties:
   Larson is currently under examination for promoter penalties. The assessment of promoter penalties in the future against Larson will result in a significant promoter penalty liability.

3. Pending and Future Civil Law Suits

Larson's lawyer during the sentencing indicated that there are currently 14 civil law suits pending against Mr. Larson seeking monetary settlements against him. In addition, there were 93 Strategic Investment Funds and 186 Investors in BLIPS tax shelter sold by Presidio. Each investor is a pending civil law suit seeking monetary settlement against Mr. Larson.

4. Other expenses

| | |
|---|---|
| Quarterly property taxes | $2,000.00 |
| Monthly incarceration charge | $2,076.83 |

C. CONCLUSION:

Based upon the above, it could be concluded that Mr. Larson is now or shortly will be insolvent.

Summary

1. You have been found guilty of twelve counts of tax evasion under 26 USC § 7201 and 18 USC § 2.

2. You created trusts in foreign jurisdictions, namely, the Bailiwick of Guernsey.

3. You transferred large sums of money into trusts located offshore after you learned of Notice 2000-44, which disallowed the tax benefits of the transactions you engaged in and thus alerted you to the possibility that you would face tax liabilities and creditors.

4. You failed to report on your 1999 federal income tax return your foreign bank accounts to the Internal Revenue Service as required by law.

5. You have failed to pay a penalty assessment of $10,000 made during the tax year 2006 for failure to report foreign bank accounts as required by law.

6. The 2nd Circuit Court of Appeals has upheld your conviction, but has determined that the $6,000,000 fine was in excess of what is permitted by law and the difference should be refunded to you.

7. The Internal Revenue Service believes that you will put the refund amount of $3,000,000 beyond reach of the Internal Revenue Service.

8. You have significant contacts located overseas who may be able to provide assistance to you in moving and maintaining assets offshore.

The above stated facts thereby tend to jeopardize or prejudice or impede the collection of income tax for the periods of December 31, 1998 through December 31, 2001, inclusive. Accordingly, based on information available at this time, I have approved assessment of tax and additional amounts determined to be due as reflected in the attached computations:

| Taxable Period | Tax | Interest |
|---|---|---|
| 1998 | $ 1,755,379.00 | $1,905,412.10 |
| 1999 | 5,814,159.00 | 5,372,634.91 |
| 2000 | 2,161,275.00 | 1,641,508.20 |
| 2001 | $ 1,250,626.00 | $ 802,739.73 |
| Total | $10,981,439.00 | $9,722,294.94 |

Under Section 7429 of the Internal Revenue Code, you are entitled to request administrative and judicial reviews of this assessment action.

For an administrative review, you may file a written protest with the Director Field Operations, West within 30 days from the date of this letter, requesting redetermination of whether or not:

1. the making of the jeopardy assessment is reasonable under the circumstances, and

2. the amount so assessed or demanded as a result of the action is appropriate under the circumstances.

When feasible, a conference will be held on an expedite basis to consider your protest. Your protest will be forwarded to the Regional Appeals Office where a conference will be held.

If you submit new information or documentation for the first time at an Appeals conference, the Appeals Office may request comment from the Director Field Operations, West on such evidence or documents.

Enforced collection action may proceed during any administrative appeal process unless arrangements are made regarding collection of the amount assessed. To make such arrangements, please contact Revenue Officer *Linda Y. Thomas at (914) 684-7181.*

You may request a judicial review of this assessment by bringing a civil suit against the United States in the U.S. District Court in the judicial district in which you reside, or in which your principal office is located. However, in order to have this action reviewed by the District Court, you must request administrative review within 30 days of the date of this letter. Such suit must be filed within 90 days after the earlier of (1) the day that the

8

Service notifies you of its decision on your request for administrative review, or (2) the 16th day after your request for administrative review was made. The Court will make an early determination of the same points raised in your protest to determine whether the making of the assessment is reasonable under the circumstances, and whether the amount assessed or demanded is appropriate under the circumstances. The Court's determination is final and not reviewable by any other court.

## Appeal to the Courts in Case of Income, Estate, Gift and Certain Excise Taxes

If an agreement is not reached with the Internal Revenue Service, a notice of deficiency is required by law to be issued within 60 days from the date of jeopardy assessment made under section 6861 of the Internal Revenue Code. You will then have 90 days (150 days if outside the United States) from the date the notice is mailed to file a petition with the United States Tax Court.

## Appeal to Courts in Case of Other Taxes Assessed Under IRC 6862

Claim for credit or refund of taxes assessed under section 6862 of the Internal Revenue Code may be filed in accordance with section 6511(a) of the Code for administrative and judicial review of the merits of the liability assessed. An administrative decision on the claim may be appealed to the courts under the provisions of section 7422(a) of the Code.

If you have questions about this letter, you may call or write the office of the contact person identified on the front of this letter. You also have the right to contact the office of the Taxpayer Advocate. Taxpayer Advocate assistance is not a substitute for established IRS procedures, and it cannot reverse legally correct tax determinations nor extend the fixed time for you to request an administrative review or bring civil suit. The Taxpayer Advocate can, however, see that a tax matter that may not have been resolved through normal channels gets prompt and proper handling. If you want Taxpayer Advocate assistance, call 1 (877) 777-4778.

Thank you for your cooperation.

Sincerely,

Maria Hwang

**Maria S. Hwang**
Director Field Operations, West

9

Exhibit 1

**Concorde Trust** – foreign trust located in Guernsey.

**Converse Trust** - foreign trust located in Guernsey.

**Hayes Street Management, Inc. (HSM)** – formed during 1999 by John M. Larson through JL Capital Trust, Robert A. Pfaff through RP Capital Trust and Pointe Du Hoc IT, and David Amir Makov through DAM Rev. Trust. HSM was later known as HSM Industries, Inc.

**Helminvest Resources (HR)** – formed by Helge Vilhelmsen, a foreign national during 1998.

**JL Capital Company (JLCC)** – sole-member LLC formed by JLCT during 1999.

**JL Capital Trust (JLCT)** – grantor trust formed by John M. Larson during 1999.

**David Amir Makov (Makov)** – partner in Presidio Growth.

**Morley, Inc.** – formed in 1999 by John M. Larson through JL Capital Trust, Robert A. Pfaff through RP Capital Trust and RP Irrevocable Trust, and David Amir Makov through D. Amir Makov Irrevocable Trust.

**Morley ESOP** – Morley's stock contributed with Morley and PAS LLC employees as participants.

**Norvest Ltd** – see Norwood Holdings, Inc.

**Norwegians** – Odd Ekholt, Nils Hilstadt and Helge Vilhelmsen

**Norwood Holdings, Inc.** – formed by the merger of Mountain View Investment Co. (owned by Nils Hilstadt and Helge Vilhelmsen, both Norwegian nationals) and Skandia America, Inc. (owned by Helge Vilhelmsen). Became Norvest Ltd. during 2000.

**Robert A. Pfaff (Pfaff)** – former partner at KPMG. Formed, along with John M. Larson, Presidio Advisors LLC, Presidio Financial Group and Prevad, Inc.

**Presidio Advisors LLC** – formed by Larson, Pfaff and Norwood during 1997.

**Presidio Advisory Service, Inc. (PAS Inc.)** – formed by Larson through JL Capital Trust, Pfaff through RP Capital Trust and RP Irrevocable Trust, and Makov through D. Amir Makov Irrevocable Trust during 1999.

**Presidio Advisory Services LLC (PAS LLC)** – formed by Morley and PAS Inc.

**Presidio Capital Corporation (PCC)** – formed by Larson through John Larson Investment Trust, Pfaff through Robert Pfaff Investment Trust and Helminvest Resources (HR) during 1998.

**Presidio Financial Group LLC** – formed by Prevad and Norwood during 1998.

**Presidio Growth LLC** – formed by Norwood and HSM during 1999.

**Prestop Holdings LLC** – formed by Larson through JL Investment Trust and Pfaff through RP Investment Trust during 1997.

**Prevad Acquisition Company (PAC)** – incorporated during 1999 with Helge Vilhelmsen as the owner of record.

**Prevad, Inc. (dba Presidio Resources, Inc.)** - Initially formed as an S Corporation during 1998 by Larson through JL Capital Trust and Pfaff through RP Capital Trust and converted to a C Corporation during 1999.

**RP Capital Company (RPCC)** – sole-member LLC formed by RPCT during 1999.

**RP Capital Trust (RPCT)** – grantor trust formed by Robert A. Pfaff during 1999.

**Traverse Trust** - foreign trust located in Guernsey.

**Torpre, Inc. (Torpre)** – formed by Larson through JL Investment Trust and Pfaff through RP Investment Trust during 1997.

# EXHIBIT 2



# Internal Revenue Service
United States Department of the Treasury

| This Product Contains Sensitive Taxpayer Data |
|---|

## Account Transcript

Request Date: 03-07-2011
Response Date: 03-07-2011
Tracking Number: 100093349090

FORM NUMBER: 1040                 TAX PERIOD: Dec. 31, 2001

TAXPAYER IDENTIFICATION NUMBER:            REDACTED 2112

JOHN M LARSON
66 LEONARD ST APT 5F
NEW YORK, NY 10013-3478-562

<<<<POWER OF ATTORNEY/TAX INFORMATION AUTHORIZATION (POA/TIA) ON FILE>>>>

--- ANY MINUS SIGN SHOWN BELOW SIGNIFIES A CREDIT AMOUNT ---

```
ACCOUNT BALANCE:                 2,053,365.73
ACCRUED INTEREST:                    4,746.21  AS OF: Mar. 21, 2011
ACCRUED PENALTY:                    12,506.26  AS OF: Mar. 21, 2011


ACCOUNT BALANCE PLUS ACCRUALS
(this is not a payoff amount):   2,070,618.20
```

** INFORMATION FROM THE RETURN OR AS ADJUSTED **

```
EXEMPTIONS:                                01
FILING STATUS:                         Single
ADJUSTED GROSS INCOME:           9,638,751.00
TAXABLE INCOME:                  9,053,489.00
TAX PER RETURN:                  2,162,772.00
SE TAXABLE INCOME TAXPAYER:              0.00
SE TAXABLE INCOME SPOUSE:                0.00
TOTAL SELF EMPLOYMENT TAX:         118,750.00
```

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER)    Oct. 15, 2002
PROCESSING DATE                                          Nov. 25, 2002

| TRANSACTIONS | | | |
|---|---|---|---|
| CODE EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
| 150   Tax return filed | 20024608 | 11-25-2002 | $2,162,772.00 |

89221-302-89615-2

| | | | |
|---|---|---|---|
| 806 | W-2 or 1099 withholding | 04-15-2002 | -$4,650.00 |
| 430 | Estimated tax payment | 06-21-2001 | -$35,000.00 |
| 430 | Estimated tax payment | 09-17-2001 | -$850,000.00 |
| 716 | Credit you chose to transfer from prior tax period | 04-15-2001 | -$145,406.04 |
| 716 | Credit you chose to transfer from prior tax period | 12-03-2001 | -$279.96 |
| 460 | Extension of time to file ext. Date 08-15-2002 | 04-14-2002 | $0.00 |
| 670 | Payment | 04-14-2002 | -$2,900,000.00 |
| 460 | Extension of time to file ext. Date 10-15-2002 | 04-15-2002 | $0.00 |
| 176 | Penalty for not pre-paying tax | 20024608 11-25-2002 | $39,526.41 |
| 836 | Refund you chose to apply to next year's taxes | 04-15-2002 | $1,733,037.59 |
| 960 | Appointed representative | 01-24-2003 | $0.00 |
| 420 | Examination of tax return | 05-22-2003 | $0.00 |
| 960 | Appointed representative | 06-15-2007 | $0.00 |
| 960 | Appointed representative | 04-10-2009 | $0.00 |
| 560 | IRS can assess tax until 12-31-2011 | 10-05-2010 | $0.00 |
| 300 | Additional tax assessed by examination | 20110908 03-14-2011 | $0.00 |
| | 29247-440-10022-1 | | |
| 300 | Additional tax assessed by examination - jeopardy assessment | 20110908 02-07-2011 | $1,250,626.00 |
| | 29251-038-10003-1 | | |
| 190 | Interest charged for late payment | 20110908 02-07-2011 | $802,739.73 |

---

**This Product Contains Sensitive Taxpayer Data**



Internal Revenue Service

```
================================================================
        This Product Contains Sensitive Taxpayer Data
================================================================
```

## **Account Transcript**

Request Date: 03-07-2011
Response Date: 03-07-2011
Tracking Number: 100093349090

FORM NUMBER: 1040                    TAX PERIOD: Dec. 31, 2000

TAXPAYER IDENTIFICATION NUMBER:              REDACTED   2112

JOHN M LARSON
66 LEONARD ST APT 5F
NEW YORK, NY 10013-3478-562

<<<<POWER OF ATTORNEY/TAX INFORMATION AUTHORIZATION (POA/TIA) ON FILE>>>>

    --- ANY MINUS SIGN SHOWN BELOW SIGNIFIES A CREDIT AMOUNT ---

ACCOUNT BALANCE:                  3,802,783.20
ACCRUED INTEREST:                    13,149.56  AS OF: Mar. 21, 2011
ACCRUED PENALTY:                     21,612.75  AS OF: Mar. 21, 2011

ACCOUNT BALANCE PLUS ACCRUALS
(this is not a payoff amount):    3,837,545.51

     ** INFORMATION FROM THE RETURN OR AS ADJUSTED **

EXEMPTIONS:                                 01
FILING STATUS:                          Single
ADJUSTED GROSS INCOME:           11,086,886.00
TAXABLE INCOME:                  10,906,015.00
TAX PER RETURN:                   1,727,803.00
SE TAXABLE INCOME TAXPAYER:               0.00
SE TAXABLE INCOME SPOUSE:                 0.00
TOTAL SELF EMPLOYMENT TAX:                0.00

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER)    Oct. 22, 2001
PROCESSING DATE                                                 Nov. 26, 2001

```
================================================================
                          TRANSACTIONS
================================================================
```

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|------|----------------------------|-------|------|--------|
| 150 | Tax return filed | 20014608 | 11-26-2001 | $1,727,803.00 |

89221-301-18132-1

| | | | |
|---|---|---|---|
| 806 | W-2 or 1099 withholding | 04-15-2001 | -$122,844.00 |
| 430 | Estimated tax payment | 09-16-2000 | -$175,000.00 |
| 716 | Credit you chose to transfer from prior tax period | 04-15-2000 | -$175,365.04 |
| 430 | Estimated tax payment | 01-14-2001 | -$200,000.00 |
| 460 | Extension of time to file ext. Date 08-15-2001 | 04-15-2001 | $0.00 |
| 670 | Payment | 04-15-2001 | -$1,200,000.00 |
| 460 | Extension of time to file ext. Date 10-15-2001 | 04-15-2001 | $0.00 |
| 836 | Refund you chose to apply to next year's taxes | 04-15-2001 | $145,406.04 |
| 766 | Tax relief credit | 12-03-2001 | -$300.00 |
| 290 | Additional tax assessed | 20014708 12-03-2001 | $0.00 |
| | 89254-999-05099-1 | | |
| 836 | Refund you chose to apply to next year's taxes | 12-03-2001 | $279.96 |
| 846 | Refund issued | 12-03-2001 | $20.04 |
| 420 | Examination of tax return | 04-04-2002 | $0.00 |
| 960 | Appointed representative | 01-24-2003 | $0.00 |
| 960 | Appointed representative | 06-15-2007 | $0.00 |
| 960 | Appointed representative | 04-10-2009 | $0.00 |
| 560 | IRS can assess tax until 12-31-2011 | 10-05-2010 | $0.00 |
| 300 | Additional tax assessed by examination | 20110908 03-14-2011 | $0.00 |
| | 29247-440-10021-1 | | |
| 300 | Additional tax assessed by examination – jeopardy assessment | 20110908 02-07-2011 | $2,161,275.00 |
| | 29251-038-10002-1 | | |
| 190 | Interest charged for late payment | 20110908 02-07-2011 | $1,641,508.20 |

This Product Contains Sensitive Taxpayer Data



**Internal Revenue Service**
United States Department of the Treasury

This Product Contains Sensitive Taxpayer Data

## Account Transcript

Request Date: 03-07-2011
Response Date: 03-07-2011
Tracking Number: 100093349090

FORM NUMBER: 1040

TAX PERIOD: Dec. 31, 1999

TAXPAYER IDENTIFICATION NUMBER:      REDACTED    2112

JOHN M LARSON
66 LEONARD ST APT 5F
NEW YORK, NY 10013-3478-562

<<<<POWER OF ATTORNEY/TAX INFORMATION AUTHORIZATION (POA/TIA) ON FILE>>>>

--- ANY MINUS SIGN SHOWN BELOW SIGNIFIES A CREDIT AMOUNT ---

| | |
|---|---|
| ACCOUNT BALANCE: | 11,186,793.91 |
| ACCRUED INTEREST: | 38,655.11   AS OF: Mar. 21, 2011 |
| ACCRUED PENALTY: | 58,141.59   AS OF: Mar. 21, 2011 |

ACCOUNT BALANCE PLUS ACCRUALS
(this is not a payoff amount):      11,283,590.61

** INFORMATION FROM THE RETURN OR AS ADJUSTED **

| | |
|---|---|
| EXEMPTIONS: | 01 |
| FILING STATUS: | Single |
| ADJUSTED GROSS INCOME: | 17,962,901.00 |
| TAXABLE INCOME: | 17,816,078.00 |
| TAX PER RETURN: | 285,740.00 |
| SE TAXABLE INCOME TAXPAYER: | 0.00 |
| SE TAXABLE INCOME SPOUSE: | 0.00 |
| TOTAL SELF EMPLOYMENT TAX: | 0.00 |

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER)    Oct. 13, 2000
PROCESSING DATE      Nov. 13, 2000

### TRANSACTIONS

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|---|---|---|---|---|
| 150 | Tax return filed | 20004408 | 11-13-2000 | $285,740.00 |

89221-288-81923-0

| | | | |
|---|---|---|---|
| 806 | W-2 or 1099 withholding | 04-15-2000 | -$17,378.00 |
| 430 | Estimated tax payment | 04-19-1999 | -$13,000.00 |
| 430 | Estimated tax payment | 06-21-1999 | -$82,000.00 |
| 430 | Estimated tax payment | 09-15-1999 | -$92,000.00 |
| 716 | Credit you chose to transfer from prior tax period | 04-15-1999 | -$26,007.00 |
| 430 | Estimated tax payment | 01-18-2000 | -$121,000.00 |
| 460 | Extension of time to file ext. Date 08-15-2000 | 04-15-2000 | $0.00 |
| 670 | Payment | 04-15-2000 | -$110,000.00 |
| 460 | Extension of time to file ext. Date 10-15-2000 | 04-15-2000 | $0.00 |
| 176 | Penalty for not pre-paying tax | 20004408 11-13-2000 | $279.96 |
| 836 | Refund you chose to apply to next year's taxes | 04-15-2000 | $175,365.04 |
| 420 | Examination of tax return | 04-04-2002 | $0.00 |
| 960 | Appointed representative | 01-24-2003 | $0.00 |
| 960 | Appointed representative | 06-15-2007 | $0.00 |
| 960 | Appointed representative | 04-10-2009 | $0.00 |
| 560 | IRS can assess tax until 12-31-2011 | 10-05-2010 | $0.00 |
| 300 | Additional tax assessed by examination | 20110908 03-14-2011 | $0.00 |
| | 29247-440-10020-1 | | |
| 300 | Additional tax assessed by examination - jeopardy assessment | 20110908 02-07-2011 | $5,814,159.00 |
| | 29251-038-10001-1 | | |
| 190 | Interest charged for late payment | 20110908 02-07-2011 | $5,372,634.91 |

This Product Contains Sensitive Taxpayer Data



Internal Revenue Service
United States Department of the Treasury

```
This Product Contains Sensitive Taxpayer Data
```

## Account Transcript

Request Date: 03-07-2011
Response Date: 03-07-2011
Tracking Number: 100093349090

FORM NUMBER: 1040                    TAX PERIOD: Dec. 31, 1998

TAXPAYER IDENTIFICATION NUMBER:

REDACTED
2112

JOHN M LARSON
66 LEONARD ST APT 5F
NEW YORK, NY 10013-3478-562

<<<<POWER OF ATTORNEY/TAX INFORMATION AUTHORIZATION (POA/TIA) ON FILE>>>>

--- ANY MINUS SIGN SHOWN BELOW SIGNIFIES A CREDIT AMOUNT ---

ACCOUNT BALANCE:                     3,660,791.10
ACCRUED INTEREST:                       12,658.55  AS OF: Mar. 21, 2011
ACCRUED PENALTY:                        17,553.79  AS OF: Mar. 21, 2011

ACCOUNT BALANCE PLUS ACCRUALS
(this is not a payoff amount):       3,691,003.44

** INFORMATION FROM THE RETURN OR AS ADJUSTED **

EXEMPTIONS:                                    01
FILING STATUS:                             Single
ADJUSTED GROSS INCOME:               5,646,968.00
TAXABLE INCOME:                      5,632,571.00
TAX PER RETURN:                        452,677.00
SE TAXABLE INCOME TAXPAYER:                  0.00
SE TAXABLE INCOME SPOUSE:                    0.00
TOTAL SELF EMPLOYMENT TAX:                   0.00

RETURN DUE DATE OR RETURN RECEIVED DATE (WHICHEVER IS LATER)    Oct. 18, 1999
PROCESSING DATE                                                 Nov. 22, 1999
```
TRANSACTIONS
```

| CODE | EXPLANATION OF TRANSACTION | CYCLE | DATE | AMOUNT |
|------|----------------------------|-------|------|--------|
| 150  | Tax return filed           | 19994508 | 11-22-1999 | $452,677.00 |

89221-291-31232-9

| | | | |
|---|---|---|---|
| 806 | W-2 or 1099 withholding | 04-15-1999 | -$484.00 |
| 430 | Estimated tax payment | 04-16-1998 | -$43,300.00 |
| 430 | Estimated tax payment | 06-18-1998 | -$43,300.00 |
| 430 | Estimated tax payment | 09-21-1998 | -$43,300.00 |
| 430 | Estimated tax payment | 01-17-1999 | -$43,300.00 |
| 460 | Extension of time to file ext. Date 08-15-1999 | 04-15-1999 | $0.00 |
| 670 | Payment | 04-15-1999 | -$305,000.00 |
| 460 | Extension of time to file ext. Date 10-15-1999 | 04-15-1999 | $0.00 |
| 836 | Refund you chose to apply to next year's taxes | 04-15-1999 | $26,007.00 |
| 420 | Examination of tax return | 04-04-2002 | $0.00 |
| 960 | Appointed representative | 01-24-2003 | $0.00 |
| 520 | Bankruptcy or other legal action filed | 04-05-2005 | $0.00 |
| 960 | Appointed representative | 06-15-2007 | $0.00 |
| 960 | Appointed representative | 04-10-2009 | $0.00 |
| 560 | IRS can assess tax until 12-31-2011 | 10-05-2010 | $0.00 |
| 300 | Additional tax assessed by examination | 20110908 03-14-2011 | $0.00 |
| | 29247-440-10019-1 | | |
| 300 | Additional tax assessed by examination - jeopardy assessment | 20110908 02-07-2011 | $1,755,379.00 |
| | 29251-038-10000-1 | | |
| 190 | Interest charged for late payment | 20110908 02-07-2011 | $1,905,412.10 |

---

**This Product Contains Sensitive Taxpayer Data**

# EXHIBIT 3

**Internal Revenue Service**
210 E. POST ROAD
WHITE PLAINS, NY 10601

⁓Department of the Treasury

**Date:** 02/08/2011

JOHN M LARSON
66 LEONARD ST APT 5F
NEW YORK, NY 10013-3478

*RECEIVED*
*FEB 1 - 2011*
*THM, PC*

**Taxpayer Identification Number:**
REDACTED      2112
**Person to Contact:**
LINDA Y. THOMAS
**Contact Telephone Number:**
(914)684-7181
**Contact Fax Number:**
(914)684-7227
**Employee Identification Number:**
02-53865

### NOTICE OF JEOPARDY LEVY AND RIGHT OF APPEAL

As required by Section 6331 of the Internal Revenue Code (IRC), I am notifying you that I have found that you may be concealing, dissipating or transferring assets overseas, thereby putting our collection of the 1040 tax you owe for the tax periods 12/31/1998; 12/31/1999; 12/31/2000; 12/31/2001 in jeopardy. Therefore, based on the information available to me at this time, I have approved the issuance of a levy to collect the amount you owe, although we have not provided you a notice of intent to levy and/or notice of your right to a hearing, generally required by Sections 6630 and 6631 of the IRC.

The amount you owe is shown on the next page. The unpaid amount from prior notices may include tax, penalties and interest you still owe. It also includes any credits and payments we have received since we sent our last notice to you. Below is a brief explanation of the interest and/or failure to pay penalty that may be included in the amount you owe:

**Interest - Internal Revenue Code Section 6601**
We charge interest when your tax is not paid on time. Interest is computed from the due date of your return (regardless of extensions) until paid in full or to the date of this notice. Interest is also charged on penalties assessed on your account. Interest compounds daily except on underpaid estimated taxes for individuals or corporations.

**Paying Late - Internal Revenue Code Section 6651(a)(2)**
We charge a penalty when your tax is not paid on time. Initially, the penalty is ½% of the unpaid tax for each month or part of a month the tax was not paid.

Under IRC Section 7429, you are entitled to request an administrative review of this action. For this review, you must file a written protest with the Area Director at the above address with within 30 days from the date of this letter, requesting a redetermination of whether the levy is reasonable under the circumstances.

Under IRC Section 7429, you may request a judicial review of whether the determination that collection is in jeopardy is reasonable, by bringing a civil suit against the United States in the U.S. District Court in the judicial district in which you live, or in which your principal office is located. However, if you filed a timely petition with the Tax Court for a redetermination of a deficiency under IRC Section 6213(a) before we served the levy, and at least one of the taxes for one period included on the levy is also included in that petition, the Tax Court (in addition to the U.S. District Court) also has jurisdiction to review the levy for all tax

periods on the levy. You may also request a judicial review under IRC Section 6330 after the CDP hearing as explained in the enclosed Publication 1660.

In order to receive a judicial review of the levy under IRC Section 7429, you must first request an administrative review under that provision within 30 days from the date of this letter. You must file your suit within 90 days after the earlier of (1) the day the Service notifies you of its decision on your protest, or (2) the 16th day after you make the protest. The court will make an early determination of the same points raised in your protest to decide whether the Service's determination that collection was in jeopardy was reasonable under the circumstances. The court's determination is final and not reviewable by any other court.

We may proceed with enforced collection action during any administrative review, unless you make arrangements regarding collection of the amount you owe. To make such arrangements, or if you have other questions about this letter, please contact LINDA Y. THOMAS at (914)684-7181.

Sincerely yours,

Shahid A Babar
Acting Territory Manager

Enclosures:
Publication 594
Publication 1660
☒ Form 12153
☐ Form 9423

You now owe:

| Tax Period | Tax | Penalty | Interest | Total |
|---|---|---|---|---|
| 12/31/1998 | $3,660,791.10 | | $9,037.37 | $3,669,828.47 |
| 12/31/1999 | $11,186,793.91 | | $27,616.77 | $11,214,410.68 |
| 12/31/2000 | $3,802,783.20 | | $9,387.91 | $3,812,171.11 |
| 12/31/2001 | $2,053,365.73 | | $5,069.13 | $2,058,434.86 |

**Internal Revenue Service**
210 E. POST ROAD
WHITE PLAINS, NY 10601

**Department of the Treasury**

Kevin A Planeggar
1625 Broadway, Suite 770
Denver, CO 80202

**Letter Date:**
02/11/2011
**IRS Employee to Contact:**
LINDA Y. THOMAS
**Contact Telephone Number:**
(914)684-7181
**Employee Identification Number:**
02-53865

RECEIVED
FEB 1 7 2011
THM, PC

We are sending you the enclosed material under the provisions of a power of attorney or other authorization you have on file with us. For your convenience, we have listed below the name(s) of the taxpayer(s) to whom this material relates.

If you have any questions, please contact the person whose name and telephone number are shown above.

Sincerely yours,

LINDA Y. THOMAS
REVENUE OFFICER

Taxpayer(s)' Name(s):
JOHN M LARSON

**Letter 937 (Rev. 8-2000)**
Catalog Number: 30760X

| Form 668-A(ICS) (Rev. July 2002) | Department of the Treasury – Internal Revenue Service **Notice of Levy** |
|---|---|

DATE: **02/08/2011**

REPLY TO: **Internal Revenue Service**
             **LINDA Y. THOMAS**
             **210 E. POST ROAD**
             **WHITE PLAINS, NY 10601**

TO:  **Clerk of the Court, Ruby Krajick**
      **United States District Court for**
       **the Southern District of New York**
      **500 Pearl Street**
      **New York, NY 10007**

TELEPHONE NUMBER
OF IRS OFFICE: **(914)684-7181**

NAME AND ADDRESS OF TAXPAYER:
**John M Larson**
**FCI La Tuna - Inmate No. 58201054**
**Federal Correctional Institution**
**Federal Satellite Low**
**PO Box 6000**
**Anthony, TX 88021**

**LARS**   IDENTIFYING NUMBER(S): REDACTED **2112**

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|:---:|:---:|---:|---:|---:|
| 1040 | 12/31/1998 | $3,660,791.10 | $9,037.37 | $3,669,828.47 |
| 1040 | 12/31/1999 | $11,186,793.91 | $27,616.77 | $11,214,410.68 |
| 1040 | 12/31/2000 | $3,802,783.20 | $9,387.91 | $3,812,171.11 |
| 1040 | 12/31/2001 | $2,053,365.73 | $5,069.13 | $2,058,434.86 |
| | DUPLICATE LEVY | WITH ADDITIONAL TAXPAYER | ADDRESS | |

| THIS LEVY WON'T ATTACH FUNDS IN IRAs, SELF-EMPLOYED INDIVIDUALS' RETIREMENT PLANS, OR ANY OTHER RETIREMENT PLANS IN YOUR POSSESSION OR CONTROL, UNLESS IT IS SIGNED IN THE BLOCK TO THE RIGHT. ================================ ⟹ | | Total Amount Due | $20,754,845.12 |
|---|---|---|---|

We figured the interest and late payment penalty to   **03/09/2011**

Although we have told you to pay the amount you owe, it is still not paid.  This is your copy of a notice of levy we have sent to collect this unpaid amount.  We will send other levies if we don't get enough with this one.

**Banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must hold your money for 21 calendar days before sending it to us.  They must include the interest you earn during that time.  Anyone else we send a levy to must turn over your money, property, credits, etc. that they have** (or are already obligated for) **when they would have paid you.**

If you decide to pay the amount you owe now, please **bring** a guaranteed payment (cash, cashier's check, certified check, or money order) to the nearest IRS office with this form, so we can tell the person who received this levy not to send us your money. Make checks and money orders payable to **United States Treasury.** If you mail your payment instead of bringing it to us, we may not have time to stop the person who received this levy from sending us your money.

If we have erroneously levied your bank account, we may reimburse you for the fees your bank charged you for handling the levy.  You must file a claim with the IRS on Form 8546 within one year after the fees are charged.

If you have any questions, or want to arrange payment before other levies are issued, please call or write us.  If you write to us, please include your telephone number and the best time to call.

| Signature of Service Representative  **/S/ SHAHID A BABAR** | Title  **ACTING TERRITORY MANAGER** |
|---|---|

**Part 4 –**   For Taxpayer

Form **668-A(ICS)** (7-2002)

**Excerpts from the Internal Revenue Code**
\* \* \* \* \* \* \* \* \*

### Sec. 6331. LEVY AND DISTRAINT.

(b) Seizure and Sale of Property.–The term "levy" as used in this title includes the power of distraint and seizure by any means. Except as otherwise provided in subsection (e), a levy shall extend only to property possessed and obligations existing at the time thereof. In any case in which the Secretary may levy upon property or rights to property, he may seize and sell such property or rights to property (whether real or personal, tangible or intangible).

(c) Successive Seizures.–Whenever any property or right to property upon which levy has been made by virtue of subsection (a) is not sufficient to satisfy the claim of the United States for which levy is made, the Secretary may, thereafter, and as often as may be necessary, proceed to levy in like manner upon any other property liable to levy of the person against whom such claim exists, until the amount due from him, together with all expenses, is fully paid.

### Sec. 6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.

(a) Requirement.–Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

(b) Special rule for Life Insurance and Endowment Contracts

(1) In general.–A levy on an organization with respect to a life insurance or endowment contract issued by such organization shall, without necessity for the surrender of the contract document, constitute a demand by the Secretary for payment of the amount described in paragraph (2) and the exercise of the right of the person against whom the tax is assessed to the advance of such amount. Such organization shall pay over such amount 90 days after service of notice of levy. Such notice shall include a certification by the Secretary that a copy of such notice has been mailed to the person against whom the tax is assessed at his last known address.

(2) Satisfaction of levy.–Such levy shall be deemed to be satisfied if such organization pays over to the Secretary the amount which the person against whom the tax is assessed could have had advanced to him by such organization on the date prescribed in paragraph (1) for the satisfaction of such levy, increased by the amount of any advance (including contractual interest thereon) made to such person on or after the date such organization had actual notice or knowledge (within the meaning of section 6323 (i)(1)) of the existence of the lien with respect to which such levy is made, other than an advance (including contractual interest thereon) made automatically to maintain such contract in force under an agreement entered into before such organization had such notice or knowledge.

(3) Enforcement proceedings.–The satisfaction of a levy under paragraph (2) shall be without prejudice to any civil action for the enforcement of any lien imposed by this title with respect to such contract.

(c) Special Rule for Banks.–Any bank (as defined in section 408(n)) shall surrender (subject to an attachment or execution under judicial process) any deposits (including interest thereon) in such bank only after 21 days after service of levy.

(d) Enforcement of Levy.

(1) Extent of personal liability.–Any person who fails or refuses to surrender any property or rights to property, subject to levy, upon demand by the Secretary, shall be liable in his own person and estate to the United States in a sum equal to the value of the property or rights not so surrendered, but not exceeding the amount of taxes for the collection of which such levy has been made, together with costs and interest on such sum at the underpayment rate established under section 6621 from the date of such levy (or, in the case of a levy described in section 6331 (d)(3), from the date such person would otherwise have been obligated to pay over such amounts to the taxpayer). Any amount (other than costs) recovered under this paragraph shall be credited against the tax liability for the collection of which such levy was made.

(2) Penalty for violation.–In addition to the personal liability imposed by paragraph (1), if any person required to surrender property or rights to property fails or refuses to surrender such property or rights to property without reasonable cause, such person shall be liable for a penalty equal to 50 percent of the amount recoverable under paragraph (1). No part of such penalty shall be credited against the tax liability for the collection of which such levy was made.

(e) Effect of honoring levy.–Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)), shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

### Sec. 6333. PRODUCTION OF BOOKS.

If a levy has been made or is about to be made on any property, or right to property, any person having custody or control of any books or records, containing evidence or statements relating to the property or right to property subject to levy, shall, upon demand of the Secretary, exhibit such books or records to the Secretary.

### Sec. 6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.

(a) Release of Levy and Notice of Release.–

(1) In general.–Under regulations prescribed by the Secretary, the Secretary shall release the levy upon all, or part of, the property or rights to property levied upon and shall promptly notify the person upon whom such levy was made (if any) that such levy has been released if–

(A) the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time,
(B) release of such levy will facilitate the collection of such liability,
(C) the taxpayer has entered into an agreement under section 6159 to satisfy such liability by means of installment payments, unless such agreement provides otherwise,
(D) the Secretary has determined that such levy is creating an economic hardship due to the financial condition of the taxpayer, or
(E) the fair market value of the property exceeds such liability and release of the levy on a part of such property could be made without hindering the collection of such liability.

For purposes of subparagraph (C), the Secretary is not required to release such levy if such release would jeopardize the secured creditor status of the Secretary.

(2) Expedited determination on certain business property.–In the case of any tangible personal property essential in carrying on the trade or business of the taxpayer, the Secretary shall provide for an expedited determination under paragraph (1) if levy on such tangible personal property would prevent the taxpayer from carrying on such trade or business.

(3) Subsequent levy.–The release of levy on any property under paragraph (1) shall not prevent any subsequent levy on such property.

(b) Return of Property.–If the Secretary determines that property has been wrongfully levied upon, it shall be lawful for the Secretary to return–
(1) the specific property levied upon,
(2) an amount of money equal to the amount of money levied upon, or
(3) an amount of money equal to the amount of money received by the United States from a sale of such property.

Property may be returned at any time. An amount equal to the amount of money levied upon or received from such sale may be returned at any time before the expiration of 9 months from the date of such levy. For purposes of paragraph (3), if property is declared purchased by the United States at a sale pursuant to section 6335(e) (relating to manner and conditions of sale), the United States shall be treated as having received an amount of money equal to the minimum price determined pursuant to such section or (if larger) the amount received by the United States from the resale of such property.

(d) Return of Property in Certain Cases.–
If–
(1) any property has been levied upon, and
(2) the Secretary determines that–
(A) the levy on such property was premature or otherwise not in accordance with administrative procedures of the Secretary,
(B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the levy was imposed by means of installment payments, unless such agreement provides otherwise,
(C) the return of such property will facilitate the collection of the tax liability, or
(D) with the consent of the taxpayer or the National Taxpayer Advocate, the return of such property would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States,

the provisions of subsection (b) shall apply in the same manner as if such property had been wrongly levied upon, except that no interest shall be allowed under subsection (c).

\* \* \* \* \* \* \* \* \*

**Applicable Sections of Internal Revenue Code**

**6321. LIEN FOR TAXES.**
**6322. PERIOD OF LIEN.**
**6325. RELEASE OF LIEN OR DISCHARGE OF PROPERTY.**
**6331. LEVY AND DISTRAINT.**
**6332. SURRENDER OF PROPERTY SUBJECT TO LEVY.**
**6333. PRODUCTION OF BOOKS.**
**6334. PROPERTY EXEMPT FROM LEVY.**
**6343. AUTHORITY TO RELEASE LEVY AND RETURN PROPERTY.**
**7426. CIVIL ACTIONS BY PERSONS OTHER THAN TAXPAYERS.**
**7429. REVIEW OF JEOPARDY LEVY OR ASSESSMENT PROCEDURES.**

**For more information about this notice, please call the phone number on the front of this form.**

Form **668-A(ICS)** (1-2003)

| Form 668-A(ICS) | Department of the Treasury – Internal Revenue Service |
| (Rev. July 2002) | **Notice of Levy** |

DATE: 02/08/2011

REPLY TO:  **Internal Revenue Service**
         **LINDA Y. THOMAS**
         **210 E. POST ROAD**
         **WHITE PLAINS, NY 10601**

TO:   **Clerk of the Court, Ruby Krajick**
       **United State District Court for the**
         **Southern District of New York**
       **500 Pearl Street**
       **New York, NY 10007**

TELEPHONE NUMBER
OF IRS OFFICE: **(914)684-7181**

NAME AND ADDRESS OF TAXPAYER:

**John M Larson**
**66 Leonard Street, Apt 5F**
**New York, NY 10013-3478**

IDENTIFYING NUMBER(S): <sup>REDACTED</sup> **2112**

**LARS**

THIS ISN'T A BILL FOR TAXES YOU OWE.  THIS IS A NOTICE OF LEVY WE ARE USING TO COLLECT MONEY OWED BY THE TAXPAYER NAMED ABOVE

**ATTACHED IS A DUPLICATE LEVY WITH ADDITIONAL TAXPAYER ADDRESS.**

| Kind of Tax | Tax Period Ended | Unpaid Balance of Assessment | Statutory Additions | Total |
|---|---|---|---|---|
| 1040 | 12/31/1998 | $3,660,791.10 | $9,037.37 | $3,669,828.47 |
| 1040 | 12/31/1999 | $11,186,793.91 | $27,616.77 | $11,214,410.68 |
| 1040 | 12/31/2000 | $3,802,783.20 | $9,387.91 | $3,812,171.11 |
| 1040 | 12/31/2001 | $2,053,365.73 | $5,069.13 | $2,058,434.86 |

| THIS LEVY WON'T ATTACH FUNDS IN IRAs, SELF-EMPLOYED INDIVIDUALS' RETIREMENT PLANS, OR ANY OTHER RETIREMENT PLANS IN YOUR POSSESSION OR CONTROL, UNLESS IT IS SIGNED IN THE BLOCK TO THE RIGHT. ================================ ⟹ | Total Amount Due | $20,754,845.12 |
|---|---|---|

We figured the interest and late payment penalty to   **03/09/2011**

The Internal Revenue Code provides that there is a lien for the amount that is owed.  Although we have given the notice and demand required by the Code, the amount owed hasn't been paid.  This levy requires you to turn over to us this person's property and rights to property (*such as money, credits, and bank deposits*) that you have or which you are already obligated to pay this person.  However, don't send us more than the "Total Amount Due."

**Money in banks, credit unions, savings and loans, and similar institutions described in section 408(n) of the Internal Revenue Code must be held for 21 calendar days from the day you receive this levy before you send us the money.  Include any interest the person earns during the 21 days.  Turn over any other money, property, credits, etc. that you have or are already obligated to pay the taxpayer, when you would have paid it if this person asked for payment.**

Make a reasonable effort to identify all property and rights to property belonging to this person.  At a minimum, search your records using the taxpayer's name, address, and identifying number(s) shown on this form.  Don't offset money this person owes you without contacting us at the telephone number shown above for instructions.  You may not subtract a processing fee from the amount you send us.

**To respond to this levy —**
  1. Make your check or money order payable to **United States Treasury**.
  2. Write the taxpayer's name, identifying number(s), kind of tax and tax period shown on this form, and "LEVY PROCEEDS" on your check or money order *(not on a detachable stub.)*.
  3. Complete the back of Part 3 of this form and mail it to us with your payment in the enclosed envelope.
  4. Keep Part 1 of this form for your records and give the taxpayer Part 2 within 2 days.
If you don't owe any money to the taxpayer, please complete the back of Part 3, and mail that part back to us in the enclosed envelope.

| Signature of Service Representative | Title |
|---|---|
| /S/ SHAHID A BABAR | **ACTING TERRITORY MANAGER** |

**Part 5 –**   IRS File Copy      Catalog No. 35389E    www.irs.gov       Form **668-A(ICS)** (7-2002)

# EXHIBIT 4

# MERRIAM LAW FIRM, P.C.

ATTORNEYS AT LAW
1625 BROADWAY, SUITE 770
DENVER, COLORADO 80202

TED H. MERRIAM
KEVIN A. PLANEGGER*
GARRET M. FRANCIS
*ALSO ADMITTED IN ARIZONA

(303) 592-5404
Fax: (303) 592-5439
Email: TMerriam@taxlaw2848.com

March 9, 2011

VIA FACSIMILE (510-637-2619) and FEDERAL EXPRESS

Maria S. Hwang, Director Field Operations, West
Internal Revenue Service
1301 Clay Street
Oakland, CA  94612-5217

Re:     John M. Larson, SSN:REDACTED 2112
        Appeal/Protest of Jeopardy Assessment and Levy

Dear Ms. Hwang:

We represent John M. Larson, and our Power of Attorney on Form 2848 is on file with the Internal Revenue Service. Mr. Larson requests reconsideration by the IRS Appeals Office of the extraordinary and unjustified jeopardy assessment made on February 7, 2011 and the subsequent jeopardy levy issued on February 8, 2011. This appeal/protest is consolidated to address both the jeopardy assessment and levy. Mr. Larson further requests that this appeal/protest be heard at the IRS Appeals Office in Denver, Colorado so that his counsel has the opportunity for a face-to-face hearing.

## 1.     Name, Address and Identifying Number of the Taxpayer

John M. Larson
SSN:REDACTED 2112

Mr. Larson is currently incarcerated at the federal correctional institution in Anthony, Texas. His mailing address is:

John M. Larson
Inmate Number: 58201054
FCI La Tuna
Federal Correctional Institution
Federal Satellite Low
Post Office Box 6000
Anthony, Texas  88021

## 2.     Dates of Notice of Jeopardy Assessment and Notice of Jeopardy Levy

The Notice of Jeopardy Assessment and Right of Appeal is dated February 7, 2011, and the contact person is John W. Joseph. A copy of the notice is enclosed for ease of reference. The last day to file for administrative review is March 9, 2011. The Notice of Jeopardy Levy and Right of Appeal is dated February 8, 2011, and the contact person

Maria S. Hwang
March 9, 2011
Page 2

is Linda Y. Thomas. A copy of this notice is also enclosed for ease of reference. The last
day to file for administrative review is March 10, 2011.

## 3.     Statement of Desire to Appeal to the IRS Appeals Office

John Larson desires to appeal both the Notice of Jeopardy Assessment made on
February 7, 2011 and the Notice of Jeopardy Levy issued on February 8, 2011, and
requests a face-to-face hearing with an IRS Appeals Officer in the IRS Appeals Office in
Denver, Colorado.

## 4.     Tax Periods/Years Involved

The tax periods involved in this appeal/protest are the taxpayer's federal income
tax returns (Form 1040) for the years ending December 31, 1998; December 31, 1999;
December 31, 2000; and December 31, 2001.

## 5.     Summary of Argument

The government's extraordinary action to proceed with a jeopardy assessment
against John Larson on February 7, 2011 and a subsequent jeopardy levy on February 8,
2011 was not justified by the facts and circumstances of this case. Pursuant to Section
7429 of the Internal Revenue Code, the taxpayer has a right to administrative review of
the jeopardy action to determine whether (1) the making of the assessment was
reasonable; (2) the amount assessed was appropriate under the circumstances; and (3)
whether the levy (seizure) was reasonable under the circumstances. The assessment/levy
action will be deemed reasonable only if the government establishes that (1) the taxpayer
is a flight risk; or (2) the taxpayer is or appears to be designing to place property beyond
the reach of the government; or (3) the taxpayer's financial solvency appears to be
imperiled (without consideration of the jeopardy assessment at issue).

In this case, the government cannot meet its burden of proof to establish that any
of the above listed criteria is present, and the jeopardy assessment is not justified. Mr.
Larson is not a flight risk; he is currently incarcerated in federal prison. Mr. Larson has
not concealed or transferred assets, and he disputes and is currently litigating (or intends
to litigate) the federal income tax liabilities that the Internal Revenue Service alleges that
he owes for the 1998 through 2001 tax years. Mr. Larson is also not currently insolvent,
and his solvency is not imperiled. Finally, the amount of the assessment in this case (a
total of over $20,000,000 for the four tax years, 1998 through 2001) is not reasonable
under the circumstances; and the government's adjustments to income consist primarily
of timing differences (income reported in subsequent years) and issues that are currently
being litigated in TEFRA proceedings.

Maria S. Hwang
March 9, 2011
Page 3

## 6.    **Statement of Facts**

Former KPMG Senior Manager John Larson was one of hundreds of participants
in the design, sale, and execution of KPMG's tax minimization practice in the late
1990's. While at KPMG, he participated in the initial design of the "FLIP" and "OPIS"
transactions and, after starting (with co-defendant Robert Pfaff) a small investment firm
called Presidio Advisors, he worked closely on the design and implementation of the
"BLIPS" transaction. Mr. Larson was among nineteen individuals involved with
KPMG's tax practice who were charged by federal prosecutors with a tax evasion
conspiracy related to the creation of KPMG products, their use by more than 500 KPMG
clients, and KPMG's alleged obstruction of IRS and Senate investigations.

Most of the KPMG defendants were dismissed before trial when the district court
(in a decision affirmed by the Second Circuit Court of Appeals) held that the prosecution
unconstitutionally interfered with their Sixth Amendment right to counsel by coercing
KPMG to abandon its longstanding policy of paying the legal expenses for employees
and former employees related to their work at KPMG. The district court arbitrarily
denied Mr. Larson the benefit of that ruling by finding that it was "less clear" that KPMG
would have paid his fees because a "majority" of the conduct charged against him
occurred after he left the firm.

Mr. Larson ultimately stood trial with three other defendants. The trial began on
October 14, 2008 and lasted ten weeks. On December 17, 2008, the jury acquitted Mr.
Larson on the conspiracy charge that dominated the presentation of evidence, and of all
counts related to "FLIP" and "OPIS," but returned a general verdict convicting him of
twelve counts of tax evasion for his role in "BLIPS." On April 1, 2009, Mr. Larson was
sentenced to 121 months of imprisonment and was immediately remanded into custody.
The district court also imposed a fine of $6,000,000, which Mr. Larson timely paid.

Mr. Larson appealed his conviction and fine to the Second Circuit Court of
Appeals. On August 27, 2010, the appellate court issued a published opinion ruling that
the fine the district court had imposed was twice as large as was permitted by law and
that the maximum fine is $3,000,000. The court simultaneously affirmed the conviction
and remainder of Mr. Larson's sentence in a separate, unpublished summary order. Mr.
Larson moved for rehearing en banc. That petition was denied on November 23, 2010.
Mr. Larson filed a Petition for Writ of Certiorari in the United States Supreme Court on
February 23, 2011 to further appeal his conviction. With respect to the fine, the case was
remanded to the district court for further proceedings not inconsistent with the Second
Circuit's ruling. The district court has not taken any further action in the remanded
proceedings as of the date of this appeal/protest.

The Internal Revenue Service began an audit of Mr. Larson's federal income tax
returns in approximately 2002. Mr. Larson's 1998 tax return and multiple, subsequently
filed returns are currently under audit. At the request of the Internal Revenue Service,
Mr. Larson has annually signed Forms 872 to voluntarily extend the general three-year
statute of limitations on the assessment of additional tax. The Internal Revenue Service's
revenue agent repeatedly communicated with Mr. Larson's counsel and confirmed that

Maria S. Hwang
March 9, 2011
Page 4

this audit of personal tax returns (Forms 1040) remained on hold while his criminal case
and subsequent appeals were litigated in the courts.

In addition to the pending/current audit, Mr. Larson's income tax liabilities are
also at issue in two TEFRA proceedings currently being litigated in the United States
Court of Federal Claims: Prestop Holdings, LLC v. United States (Docket number: 05-
576) and Presidio Advisors, LLC v. United States (Docket number: 05-411). These cases
involve transactions with resulting tax losses (to Mr. Larson's grantor trust) that have
been denied by the examination division of the Internal Revenue Service. The cases were
stayed pending the outcome of the criminal case, but have now been returned to the
active docket and are in the discovery stage.

On February 7, 2011, without warning to either Mr. Larson or his counsel, the
Internal Revenue Service proceeded to assess the following amounts of tax and interest
against Mr. Larson for the 1998 through 2001 tax years:

| Tax Year | Tax | Interest |
|----------|-----|----------|
| 1998 | $1,755,379 | $1,905,412 |
| 1999 | $5,814,159 | $5,372,635 |
| 2001 | $2,161,275 | $1,641,508 |
| 2002 | $1,250,626 | $ 802,740 |

On the same day. the Service issued a Notice of Jeopardy Assessment and Right to
Appeal to Mr. Larson. The total balance for these four tax years, with additional penalty
and interest calculated through March 21, 2011, is $20,882,757.

On February 8, 2011, again, with no prior warning or consultation, Revenue
Officer Linda Thomas served a notice of levy on the United States District Court for the
Southern District of New York with the intention of seizing the imminent $3,000,000
refund of the excessive criminal fine previously paid by Mr. Larson. Ms. Thomas also
issued a Notice of Jeopardy Levy and Right to Appeal to Mr. Larson on February 8, 2011.

## 7.  Legal Authority and Legal Analysis

### A. Legal Authority

Sections 6861 and 6862 of the Internal Revenue Code provide the Internal
Revenue Service with special authority to assess and collect income taxes (and other
taxes) in cases where the routine method of tax collection may be rendered ineffective or
"jeopardized" if collection efforts are delayed. A jeopardy assessment is proper if the
government reasonably believes that funds will be placed beyond its reach. The
characteristic common to all jeopardy assessments is a determination that collection will
be endangered if regular assessment procedures are followed. State of Florida v. United
States, 891 F.2d 480 (S.D. Fla. 1989). If the Internal Revenue Service determines that
the collection of tax is in jeopardy, an assessment may be made pursuant to the

Maria S. Hwang
March 9, 2011
Page 5

aforementioned code sections.  In such a situation, the Internal Revenue Service is authorized to determine immediately the amount of tax due, immediately demand payment, and immediately levy upon the taxpayer's property.  Nolan v. United States, 539 F.Supp. 788 (D. Ariz. 1982).

Given the sweeping authority given to the Internal Revenue Service under the jeopardy assessment provisions of the Code and because of the possibility of harsh results in a particular case, Congress enacted section 7429 in 1976 to provide for expeditious administrative and judicial review of government action.  Because an inappropriate jeopardy assessment could in some cases cause the taxpayer "undue hardship," Congress enacted section 7429 to provide a form of judicial review of such assessment actions.  Snyder v. United States, 757 F.2d 1071 (D. Md. 1984) (citing S. Rep. No. 94-938, 94th Cong., 2d Sess. 363).

Section 7429 provides for expedited administrative and judicial review to determine the reasonableness of the jeopardy assessment/levy and the appropriateness of the amount assessed.  Snyder.  The taxpayer is first entitled to an administrative review of the reasonableness of the jeopardy actions.  26 U.S.C. §7429(a).  After exhausting his or her administrative remedies, the taxpayer may challenge the reasonableness of the jeopardy assessment and levy in federal district court.  26 U.S.C. §7429(b)(1)(B).  Proceedings under section 7429 are summary in nature, and are limited to two questions: (1) whether the jeopardy assessment is reasonable under the circumstances, and (2) whether the amount assessed is appropriate.  Magluta v. United States, 952 F.Supp. 798 (S.D. Fla. 1996); Young v. United States, 671 F. Supp. 1340 (S.D. Fla. 1987).  The court's determination is final and cannot be reviewed on appeal by any court.  26 U.S.C. §7429(f).

Under Section 7429(g)(1), the government bears the burden of demonstrating that the jeopardy assessment is reasonable under the circumstances.  The IRS, not the taxpayer, bears the burden of proof on the reasonableness of the assessments.  Hiley v. United States, 807 F.2d 623 (7th Cir.1986).  "Reasonable under the circumstances" means something more than "not arbitrary or capricious" and something less than "supported by substantial evidence."  Wellek v. United States, 324 F. Supp. 2d. 140 (N.D. Ill. 2004).  The general test for reviewing the reasonableness of an assessment involves an inquiry into whether: (1) the taxpayer is or appears to be designing to leave the United States or to conceal him or herself, (2) the taxpayer is or appears to be designing to hide, transfer, conceal, or dissipate his or her assets, or (3) the taxpayer's financial solvency appears to be imperiled.  Nolan v. United States, 539 F.Supp. 788 (D.C. Ariz. 1982).  If any of the above conditions are met, the jeopardy assessment is reasonable.  Id.

In addition to the aforementioned general factors for determining the reasonableness of a jeopardy assessment, courts may and should consider any other appropriate factors.  Wellek.  Among the other factors courts will consider are: (1) possession of, or dealing in, large amounts of cash, (2) prior tax returns reporting little or no income despite the taxpayer possessing large amounts of cash, (3) dissipation of assets through forfeiture, expenditures for attorneys' fees, appearance bonds, and other

Maria S. Hwang
March 9, 2011
Page 6

expenses, (4) a lack of assets from which potential tax liability can be collected, (5) the use of aliases making it difficult to locate either the taxpayer or any of his assets, and (6) failure to supply appropriate financial information when requested. Mesher v. United States, 736 F.Supp. 233 (D.C. Or. 1990). The government also bears the burden of demonstrating the reasonableness of the jeopardy levy. 26 U.S.C. § 7429(g)(1). The standards for determining the reasonableness of a jeopardy levy are the same as those for a jeopardy assessment. 26 U.S.C. §7429(b)(3)(B); Henderson v. United States, 949 F.Supp. 473 (N.D. Tex. 1996).

The district court is not required to determine the amounts of the tax liabilities assessed against the taxpayer were accurate; the issue is whether the amounts are appropriate under the circumstances. 26 U.S.C. §7429(g); Wellek. The amounts assessed by the Internal Revenue Service are presumed to be reasonable and appropriate. Wellek. The taxpayer bears the burden of proof regarding the appropriateness of the amounts assessed. Id. The district court proceeding under Section 7429 "is unrelated, substantively and procedurally, to any subsequent proceeding to determine the correct tax liability...." Wellek. Accordingly, the district court should not review the assessment and levy as a trial on the ultimate merits of the tax liabilities. Id. The correct tax liabilities must be determined in a subsequent proceeding brought by the taxpayer in the Tax Court, Claims Court, or a United States District Court.

### B. Legal and Factual Analysis

1. Jeopardy Assessment/levy

The jeopardy assessment made against John Larson on February 7, 2011 and the subsequent levy of February 8, 2011 are egregious and unwarranted acts by the Internal Revenue Service that are not supported by the facts and circumstances of this case. Again, the government has the burden of proof to establish that its assessment and levy action was reasonable. In the February 7, 2011, the Notice of Jeopardy Assessment and Right to Appeal, the Service claims that it has "found" Mr. Larson to be concealing and/or dissipating assets thereby tending to prejudice or render ineffectual collection of income tax for the 1998, 1999, 2000 and 2001 tax years. The government cites no facts in support of its "finding," because none exists. (Nor has the government explained how it made this "finding" almost two years after Mr. Larson was incarcerated, but shortly after his en banc petition was denied and it was clear that Mr. Larson would be refunded his $3 million.) Contrary to the government's unfounded suggestion, Mr. Larson has been open with the government about his assets and has neither concealed nor dissipated them. There is no factual basis to justify the Service's extraordinary action in this case.

As set forth above, the general test for reviewing the reasonableness of an assessment involves an inquiry into whether: (1) the taxpayer is or appears to be designing to leave the United States or to conceal him or herself, (2) the taxpayer is or appears to be designing to hide, transfer, conceal, or dissipate his or her assets, or (3) the taxpayer's financial solvency appears to be imperiled.

Maria S. Hwang
March 9, 2011
Page 7

Mr. Larson is currently incarcerated at the federal correctional institution (FCI La Tuna) in Anthony, Texas, and he will remain incarcerated for the next 8 years unless his conviction is overturned. Accordingly, there is no rational argument that Mr. Larson is a flight risk or that he is "designing to leave the United States or to conceal himself."

The Service contends that the jeopardy assessment/levy is justified because Mr. Larson is or appears to be designing to quickly place his property beyond the reach of the government either by removing it from the country, or by concealing it, by dissipating it or by transferring it to other persons. No such concealment/dissipation has occurred or is contemplated, and there is no evidence of any such concealment/dissipation. Mr. Larson has consistently filed all necessary disclosure forms for foreign trusts and/or foreign bank accounts. He has not concealed assets, and he has directly informed the Internal Revenue Service/United States Treasury, and the district court, of all foreign interests.

The only remaining rationale for a jeopardy assessment and/or levy is that the taxpayer is insolvent or that solvency is imperiled. That is not the case here. Mr. Larson has substantial assets and he is entitled to receive a $3,000,000 refund from the district court following the excessive fine ruling by the Second Circuit Court of Appeals. His only significant liability is the mortgage on his New York City apartment, and the value of the apartment exceeds the mortgage by at least $750,000 according the Service's valuation. The Notice of Jeopardy Assessment lists several other liabilities, including a $10,000 penalty for failing to report control over a foreign bank account. Mr. Larson was not aware of the penalty assessment, and he is reviewing returns to determine whether this penalty should be abated. Mr. Larson did file a so-called FBAR form for the 2006 tax year.

Other factors cited by courts to consider in determining the reasonableness of a jeopardy assessment provide further support for a finding that the Internal Revenue Service did not act reasonably in this case. First, Mr. Larson was not involved in a business venture/activity that generated significant amounts of cash. Second, his prior tax returns (1998 – 2001) reported high levels of income; the primary audit dispute with the Internal Revenue Service relates to disallowed losses/deductions. Third, there has no dissipation of assets through forfeiture; Mr. Larson has made expenditures for attorneys' fees, but he has the right to defend himself. Even though taxpayers have a potential outstanding tax liability, they have the right to continue paying living expenses, and attorney's and accountant's fees. McWilliams v. Commissioner, 103 T.C. 416 (1994). Fourth, as set forth above, Mr. Larson remains solvent and he maintains assets from which the potential tax liability can be collected. Fifth, Mr. Larson has not used aliases making it difficult to locate either the taxpayer or any of his assets. Again, he is incarcerated in federal prison. The government knows exactly where he is, as he is in its custody. Finally, he has not failed to supply appropriate financial information when requested. He disclosed all assets and liabilities during the sentencing phase of his criminal trial. All of these court-cited factors weigh in favor of a finding that the government's jeopardy assessment and levy action was not justified in this case.

Maria S. Hwang
March 9, 2011
Page 8

### 2.   Amount of the Assessment

The government alleges that Mr. Larson has "significantly" underreported his income for the 1998, 1999, 2000 and 2001 tax years. Pursuant to the Notice of Jeopardy Assessment, the Service has assessed tax and interest totaling over $20,000,000 over the course of the four tax years at issue. The alleged adjustments to income proposed by IRS include partnership adjustments that are currently (and appropriately) being litigated in the Federal Claims Court. These items must be litigated at the partnership level pursuant to TEFRA; it is premature and inappropriate to make these proposed adjustments directly to Mr. Larson's return. Furthermore, the alleged adjustments also include income items that were correctly reported by Mr. Larson on his federal income tax returns for subsequent years. Even assuming that all disputed factual and legal issues are ultimately decided in the government's favor, the Service's $20,000,000 assessment is wildly inflated and ignores subsequent correlative adjustments that would be necessary to avoid double taxation.

### 3.   Conclusion

The government cannot meet its burden of proof to establish that the jeopardy assessment is justified in this case. Mr. Larson is not a flight risk; he has not concealed or transferred assets, and he is not insolvent. We request that the IRS Appeals Office abate this assessments made against Mr. Larson on February 7, 2011 and void the levy issued to the United States District Court for the Southern District of New York on February 8, 2011. The alleged adjustments to income for the 1998, 1999, 2000, and 2001 tax years are outrageously inflated, and Mr. Larson should be allowed to litigate these issues without the threat of continued enforced collection action.

## 8.   **Declaration**

Upon penalties of perjury, I declare that I prepared the foregoing Appeal/Protest based upon facts and information supplied to me by the taxpayer and by the Internal Revenue Service, and to the best of my knowledge and belief, all facts are true, correct and complete.

Sincerely yours,

Ted H. Merriam

THM
Enclosures
cc: John M. Larson
    John Joseph, IRS Territory Manager, Western Area Technical Services (via fax)
    Linda Y. Thomas, IRS Revenue Officer (via fax)

# EXHIBIT 5

**Internal Revenue Service**
Appeals Office
600 17th Street
Suite 400S
Denver, CO 80202-5402

**Department of the Treasury**

**Person to contact:**
 Jim Hockett
 Employee ID Number: 000232751
 Tel:  (720) 956-4483
 Fax:  (720) 956-4565

Date:  4-18-2011

**Refer Reply to:**
 AP:FW:DEN:JWH
**In Re:**
 JOHN M LARSON
**Docket Number:**

TED H MERRIAM
MERRIAM LAW FIRM PC
1625 BROADWAY SUITE 770
DENVER CO  80202

*RECEIVED*
*APR 1 9 2011*
*THM, PC*

**Petitioner:**
 John M Larson
**Tax Period(s) Ended:**
 12/1998 12/1999 12/2000 12/2001

Dear Mr. Ted H Merriam:

This letter is a follow-up to our April 12, 2011 meeting related to the Jeopardy Assessment administrative review regarding John Larson.  Unfortunately, we did not reach a basis for settlement and have, therefore, concluded the requested IRC § 7429 administrative review.

If you have any questions, please contact the person whose name and telephone number are shown above.

Sincerely,

*Linda Alden, acting for:*

John A Salazar
Appeals Team Manager