# EXHIBIT C

```
                              941RLARF
                                                                      1
      9413LAR1                   Sentence
  1   UNITED STATES DISTRICT COURT
  1   SOUTHERN DISTRICT OF NEW YORK
  2   -----------------------------x
  2
  3   UNITED STATES OF AMERICA,
  3
  4            v.                        RS1 05 CR 888 (LAK)
  4
  5   JOHN LARSON,
  5   ROBERT PFAFF
  6   RAYMOND J. RUBLE,
  6   also known as "R.J. Ruble,"
  7
  7                 Defendants.
  8
  8   -----------------------------x
  9
  9                                      New York, N.Y.
 10                                      April 1, 2009
 10                                      3:30 p.m.
 11
 11
 12   Before:
 12
 13                   HON. LEWIS A. KAPLAN,
 13
 14                                      District Judge
 14
 15
 15
 16
 17
 18
 19
 20
 21
 22
 23
 24
 25
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300
                                                                      2
      9413LAR1                   Sentence
  1                            APPEARANCES
  1
  2   LEV L. DASSIN
  2        Acting United States Attorney for
  3        the Southern District of New York
  3   JOHN HILLEBRECHT
  4   MARGARET GARNETT
  4        Assistant United States Attorneys
  5        -and-
  5   KEVIN M. DOWNING
  6        Special Assistant United States Attorney
  6        Department of Justice, Tax Division
  7
  7   LATHAM & WATKINS
  8        Attorneys for Defendant Larson
  8   BY:  MARGARET A. TOUGH
  9           STEVEN BAUER
                            Page 1
```

```
                              941RLARF
 9           ALEXANDRA SHAPIRO
10
10   OVERLAND BORENSTEIN SCHEPER & KIM
11        Attorneys for Defendant Pfaff
11   BY:  DAVID SCHEPER
12
12   HOFFINGER STERN & ROSS
13        Attorneys for Defendant Ruble
13   BY:  JACK HOFFINGER
14        SUSAN HOFFINGER
14        -and-
15   FRANKEL & ABRAMS
15   BY:  STUART ABRAMS
16
16
17
18
19
20
21
22
23
24
25
```

                                                                3

```
     9413LAR1                 Sentence
 1           (In open court; case called)
 2           THE COURT:  Have counsel and their clients all
 3   received and read the presentence report and had it for the
 4   necessary period?
 5           Mr. Bauer?
 6           MR. BAUER:  Yes, your Honor.
 7           THE COURT:  Mr. Scheper?
 8           MR. SCHEPER:  Yes.
 9           THE COURT:  Mr. Hoffinger?
10           MR. HOFFINGER:  Yes.
11           THE COURT:  First thing we are going to take up is the
12   guidelines analysis and the presentence report.  Now, I
13   understand that there are disputes as to which guidelines
14   manual are to be used, the loss amount, role adjustments and
15   the sophisticated means adjustment.
16           Are there any other disputes either legal or factual
17   with the PSR?
18           MR. HILLEBRECHT:  I don't know it's really a dispute
19   so much as kind of a clarification, concerning Mr. Ruble, your
20   Honor.  In his PSR, Probation in paragraph 105 suggests --
21   105 -- suggested a two-level adjustment for use of special
22   skills.  But in paragraph 115, they say the same two levels
23   should be given for abuse of position of trust.
24           The government's position is that the use of special
25   skills would be more appropriate.  We think that's the proper
```

                                                                4

```
     9413LAR1                 Sentence
 1   analysis.
 2           THE COURT:  Defense disagree?
 3           MR. HOFFINGER:  No.
 4           THE COURT:  So your proposed amendment then in the
 5   case of Mr. Ruble would be that he would get the same two-point
 6   adjustment in 115, but on a different ground, right?
```

                              Page 2

941RLARF
17          THE COURT:  It's hard to keep track of all of them.
18          MR. SCHEPER:  Urging your Honor to apply a one billion
19  dollar loss figure as opposed to a figure that's on the counts
20  of conviction.  I can address that now or later as to which is
21  the appropriate --
22          THE COURT:  I think it's going to be academic.
23          Mr. Hoffinger?  Okay.  Government, do you have
24  anything else to say on this?
25          MR. HILLEBRECHT:  Not really.  I think the guidelines
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                    9
       9413LAR1          Sentence
1   are as clear as can be on the issue that your Honor is
2   addressing.
3           THE COURT:  I do too.  I find that the loss amount is
4   in excess of $100 million.  I am persuaded by the government's
5   argument to that extent, at least.  It is conceivable that it
6   might properly be determined as being more.  But I regard that
7   as immaterial for present purposes.
8           In addition to what I just said about being largely
9   persuaded by the government, I would also add this:  I conclude
10  that the deductions that were taken by all of the BLIPS
11  taxpayers were effectively counseled, induced, procured, and/or
12  wilfully caused by the defendants, and therefore all of them
13  are relevant conduct under Section 1B1.3(a)(1)(A).
14          In any case, I find that Messrs. Larson, Pfaff, and
15  Ruble conspired among themselves, at least, to obstruct the IRS
16  from collecting those taxes, and that all of those intended
17  losses were proximate consequences of their actions.
18          Thus, those losses are included in my view under
19  sentencing guideline 1B1.3(a)(1)(B) as relevant conduct.  Even
20  if they were not includable under 1B1.3(a)(1)(A), under United
21  States v. Watts, 519 U.S. 148.  That finding and its
22  consideration in the guidelines analysis would be appropriate
23  notwithstanding the acquittal on count one.  Even assuming the
24  conspiracy I just found were identical to the conspiracy
25  charged in count one, which is far from clear.
                   SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                                   10
       9413LAR1          Sentence
1           In addition, the argument advanced principally by
2   Mr. Larson concerning the fact that the government has avoided
3   or recouped a lot of the tax loss, in my view, is inconsistent
4   with Section 2T1.1(c)(5) of the guidelines manual.  It may be
5   appropriate in exercising my discretion once the guidelines are
6   determined, but they are not appropriate at this stage.
7           I also realize that I omitted to say something when I
8   first came on the bench and I'll correct that now.  Mr. Ruble's
9   Rule 29 motion is denied.  In all likelihood I will file an
10  opinion on that subject shortly.  A brief opinion.
11          The other thing I wanted to say about the loss amount
12  is that I reject the argument that the loss amount overstates
13  the offense on the theory, advanced by at least some of the
14  defendants, that they can't be deemed to have caused the entire
15  loss attributable to BLIPS.  I conclude that the contrary is
16  the case.
17          Larson and Pfaff were prime movers in the BLIPS
18  scheme.  Although I recognize that KPMG was in this business,
19  by which I mean the tax loss generator business, before BLIPS,
20  Larson and Pfaff brought BLIPS to KPMG, as I understand the
21  evidence, and in any case were instrumental in moving it
                               Page 5

941RLARF
22   through the KPMG bureaucracy.  I don't say they were the sole
23   responsible persons for that, but they were instrumental.  They
24   brought in Makov for the purpose of creating a fig leaf of an
25   investment rationale.  They brought in Ruble.  They had brought
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

11

9413LAR1                    Sentence
1   him in a lot of earlier shelters and got his opinions.
2   Mr. Ruble's opinions were extremely important to the success of
3   the entire BLIPS operation.
4             So, all three defendants, in my view, were central to
5   the BLIPS endeavor, and they are fairly chargeable with the
6   entire loss attributable to it on the grounds that I've
7   indicated.
8             So I start from the base offense level under the 2000
9   manual of 26.
10             Let's move to role adjustments.  Anyone want to add
11   anything to what's been said already?
12             MR. HILLEBRECHT:  I would, your Honor, if nobody else
13   wants to be heard.
14             First of all, most of what your Honor just said is
15   pretty much what I was going to say.  I think it makes it quite
16   clear as to Mr. Larson and Mr. Pfaff that they were indeed
17   organizers and leaders of the BLIPS scheme.  I think it's
18   frankly inconceivable to me how another position can be taken.
19   As your Honor just pointed out, they are the ones who brought
20   it to KPMG .  They are the ones who put together all the
21   details of how it was to be implemented with Mr. Makov's help.
22   They were integral, central players from the beginning of
23   BLIPS, through the implementation of BLIPS, through the end of
24   BLIPS.
25             KPMG identified most, but by no means all of the
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

12

9413LAR1                    Sentence
1   clients, but almost every single client had a meeting directly
2   with either Mr. Larson, Mr. Pfaff, Mr. Makov, or someone else
3   from Presidio.  Their roles as organizers and leaders
4   sufficient to require in the government's view a four-level
5   enhancement is demonstrated quite clearly.
6             We pointed out in our papers that Section 3B1.1 note 4
7   in the comments sets forth some of the factors that the Court
8   should look at, such as the recruitment of accomplices, which
9   your Honor has already addressed; the claimed right of the
10   larger share of the fruits of the crime.  There could be no
11   more telling incident of their role as organizers and leaders
12   than the millions and millions of dollars that Larson and Pfaff
13   personally reaped from BLIPS, more than anyone else got,
14   including the highest echelons at KPMG, in terms of personal
15   profit.  Other things as well, including the degree and
16   participation of planning and organizing the offense, which
17   your Honor has already alluded to.  They took a germ of an
18   idea, Larson and Pfaff, with the assistance of accomplices they
19   recruited, made BLIPS.
20             We think it's amply warranted they get the four levels
21   that the government's seeking.
22             THE COURT:  Thank you.  Mr. Scheper.
23             MR. SCHEPER:  Yes, sir.  Your Honor, with respect to
24   Mr. Pfaff, I just make these points.  The government glosses
25   over completely the power, which was solitary, solely KPMG's
SOUTHERN DISTRICT REPORTERS, P.C.

                              941RLARF
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                    63
         941rkpm2          Sentence
    1    all of those factors.  I urge the Court to give a sentence that
    2    actually meets all those factors, particularly deterrence and
    3    to promote respect for the law.
    4               Respectfully, given the amount of loss here, given the
    5    willful behavior of the defendants, in the government's view a
    6    minimum sentence at the high end of the guidelines range is
    7    necessary, and I say at a minimum, your Honor.
    8               THE COURT:  Thank you.
    9               Before going any further, let me say that I'm going to
   10    exercise my prerogative to defer the whole subject of
   11    restitution to another occasion.  I'd like submissions on that
   12    by May 15th.
   13               Andy, do you want to give us a hearing date in early
   14    June.
   15               June 8th at 11 o'clock.  Does that work for everybody?
   16               MR. BAUER:  Your Honor, I think it will work for me.
   17    I start a trial on May 3rd.  I think it will end in about a
   18    month.
   19               THE COURT:  If it needs to be moved a week, I think we
   20    can do that.  But for now it's June 8th at 11 o'clock.
   21               MR. BAUER:  Thank you.
   22               THE COURT:  No sentence is unimportant, and I pay
   23    attention to all of them, but I'm not sure that I have ever
   24    spent as much time thinking about sentencing in a particular
   25    case as I have in this one.  And I'm sure I have more than I
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                    64
         941rkpm2          Sentence
    1    usually say on behalf of sentencing, but it seems to me that
    2    it's appropriate in this case because it's important that I be
    3    reasonably clear about what's on my mind.
    4               There are too many people, often very smart and well
    5    educated and privileged people, who get the idea that you can
    6    make a fortune not by building a better mousetrap and not by
    7    providing some invaluable service but by finding some real or
    8    imagined loophole in the system or some gimmick and playing it
    9    for whatever it's worth.
   10               Many who do that appear to ask themselves whether an
   11    argument can be constructed that what they are doing fits
   12    within the technical limits of the law.  Far too few of them
   13    seem to ask themselves something much more basic, whether it's
   14    right, whether it passes the smell test.  I think we would have
   15    all been a lot better off if they all spent more time on those
   16    questions and less time and less money on whether there is some
   17    argument that what they are doing can be squared with the
   18    statute books.
   19               The part of this case that I tried seems to me to be a
   20    perfect example of what I am talking about.  Presidio, of
   21    course that means principally Mr. Larson and Mr. Pfaff, cooked
   22    up BLIPS.  They did it for the purpose of developing a product,
   23    an interesting euphemism in and of itself, to be mass marketed
   24    to people with enormous taxable incomes:  At least at one
   25    point, and maybe throughout, only to people who made at least
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300
                                                                    65
         941rkpm2          Sentence
    1    $20 million in a single year.
                              Page 30

941RLARF

```
 2          While BLIPS and the other shelters they were involved
 3   in all were dressed up as investment opportunities, that is not
 4   what they were all about.  They were designed to create tax
 5   losses so that super rich people could avoid paying income
 6   taxes.  They were sold on that basis.  The people that KPMG and
 7   Presidio pitched to go into these deals weren't asked, at least
 8   in any serious way, whether they wanted to invest in some
 9   genuine and promising investment opportunity.
10          They were asked how much income they wanted to shelter
11   from the government KPMG and Presidio both charged fees on that
12   basis.  One didn't pay a brokerage commission or anything like
13   that in these deals.  If one elected to go into one of these
14   deals, you paid 7 percent of the tax deduction that you were
15   going to get.  That is extremely offensive.  I think most
16   people would say that didn't pass the smell test, not from day
17   one.
18          Of course, I studied tax law, too, in my day.  I know
19   very well what Learned Hand said many years ago.  For any of
20   you in the room who may not know it, he said this, and he was
21   right:  "Anyone may so arrange his affairs that his taxes shall
22   be as low as possible.  He is not bound to choose that pattern
23   which will best pay the Treasury.  There is not even a
24   patriotic duty to increase one's taxes."
25          I certainly know also that there is a large industry,
```

941rkpm2                   Sentence

```
 1   consisting primarily of lawyers and accountants, that helps
 2   people arrange their affairs so as to minimize their taxes.
 3   And there's really nothing wrong with that as a general matter.
 4   But there does come a time when a scheme is so raw, so brazen,
 5   and so outrageous that it crosses the line that separates bad
 6   or incompetent or unsuccessful tax planning from crime.
 7          This case is about whether these three individuals
 8   crossed that line.  Indeed, it was about whether four
 9   individuals crossed that line.  The jury found beyond a
10   reasonable doubt that these defendants did so on many of the
11   occasions in which the government charged criminality.  They
12   found not guilty as to one defendant altogether.
13          (Continued on next page)
14
15
16
17
18
19
20
21
22
23
24
25
```

9413LAR3                   Sentence

```
 1          THE COURT:  The jury, in my judgment, was justified in
 2   reaching the verdict that it did, across the board.  I
 3   personally considered it an intelligent, a thoughtful, and a
 4   careful verdict.
 5          Now, I've considered very carefully the arguments made
 6   by the defendants' very able counsel.  I want to say to each
```

941RLARF
17  substantially identical.
18          Fourth, there is a suggestion in one of the
19  submissions that I should go easy on these defendants because
20  the indictment was dismissed as against others who were
21  involved in these BLIPS deals.  I don't buy that argument
22  either.
23          The case was dismissed as to the 13 defendants to whom
24  they refer because the government violated the constitutional
25  rights of those defendants.  They did not violate the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                72
        9413LAR3              Sentence
1   constitutional rights of these defendants, and there is no
2   reason why these defendants should benefit from the
3   government's misconduct that was not prejudicial to them.
4          Furthermore, the argument the defendants make assumes
5   that the other defendants, had they stood trial, would have
6   been convicted.  We don't really have any way of knowing that.
7   So I decline to take into account the dismissal of the 13
8   so-called KPMG defendants in sentencing these individuals.
9          There has been mention also by defendants that the
10  government's theory has shifted from time to time.  There is a
11  certain degree of truth, more than a little truth in that.  We
12  did spend some time trying to pin the government down.  But by
13  the time this case went to trial, there was in fact nothing
14  very novel, nothing unexpected, about the tax evasion counts on
15  which these defendants were convicted.  They were pretty
16  straightforward.  So I decline the invitation to go easy on the
17  defendants because of the government's understandable casting
18  about during the pretrial period.
19          Now, all of that said, I want to be clear that I've
20  considered in formulating the sentences in this case, of
21  course, the sentencing guidelines and the range that they
22  indicate.  I've considered all of the factors set forth in the
23  Sentencing Reform Act, including in particular Section 3553(a).
24  I want to make a few remarks about some of them without
25  suggesting by omission that I didn't consider anything else.
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300
                                                                73
        9413LAR3              Sentence
1          First of all, I'm obliged to consider the nature and
2   circumstances of the offense.  In the case of Messrs. Larson
3   and Pfaff, they cooked up in significant portion this mass
4   produced scheme to cheat the government out of tax revenue for
5   the purpose of enriching themselves.  It's that simple.  As
6   I've indicated, I certainly appreciate the legitimate nature of
7   much tax planning.  These activities were way beyond that.
8          I also take into account in the case of Mr. Larson the
9   rather interesting fact that he transferred millions of dollars
10  to Channel Islands trusts in the Island of Guernsey after the
11  IRS issued its notice 2000-44, and thus, when the handwriting
12  was on the wall that he was going to be facing at an absolute
13  minimum a mass of civil litigation, and quite likely a serious
14  risk of criminal prosecution, this was a brazen act.
15          In the case of Mr. Ruble, he was not as central to the
16  scheme.  His activities were willful and criminal, but in my
17  judgment, of a somewhat lesser order of magnitude than Larson
18  and Pfaff.  He also was not a direct beneficiary of the
19  stupendous revenues that were generated by Presidio and KPMG at
20  least to an extent.  But he did benefit through the increase in
21  his importance in his law firm, in all likelihood by the level
                        Page 34

941RLARF
22 of his compensation from the law firm, and to an extent, which
23 is a lot of money to most people, but not much in the scope of
24 this scheme, by the side payments that he received under the
25 table from Larson and Pfaff that he concealed from his law
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

74

9413LAR3                    Sentence
1 firm.  He, too, certainly crossed the line that separates
2 appropriate tax counsel from criminal behavior.
3          So the bottom line of this is they were all motivated
4 by greed to varying extent.  The offense was of huge
5 proportions.  There are some differences in culpability to
6 which I have alluded.  Not culpability in the sense of criminal
7 culpability.  They all share that.  But the extent of the
8 blameworthiness.
9          I'm obliged to consider the history and
10 characteristics of the defendants.  I certainly accept that,
11 apart from the offenses of conviction, and the activities with
12 regard to these tax shelters that were marketed through KPMG
13 which were not limited to BLIPS, but which I more or less think
14 of as part of the same course of conduct, though I have not
15 included the other shelters as relevant conduct for guidelines
16 purposes, these are all upstanding men.  They are people who,
17 but for this, I assume anybody in this room would be happy to
18 associate with and to consider a friend.  To the extent they
19 are family people, they are good family people.  They have
20 unblemished records.  That's entitled to consideration.
21          I think also entitled to consideration is age.  Now, I
22 do understand that under the guidelines, age is a discouraged
23 characteristic.  But we are not in guidelines land.  We are in
24 the Sentencing Reform Act land.  And there is a world of
25 difference between a 20-year sentence to a 23 year old, and a
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

75

9413LAR3                    Sentence
1 20-year sentence to a 65 year old.  Anybody who doesn't think
2 that is living on another planet.
3          Given the guideline range for which the government
4 advocated, and which I haven't passed on, a guideline sentence
5 under the 2008 manual would be a life sentence without parole
6 for all of these men.  Even a guideline sentence in the ranges
7 that I have found could be a life sentence in one or more
8 cases.  And in any case, would require imprisonment for so long
9 as to leave only a very small portion of life left in all
10 likelihood.  That warrants consideration.  Sentencing is not
11 all applying the chart in the guidelines manual.
12          The next consideration here is that the sentence must
13 reflect the seriousness of the offense, promote respect for the
14 law, and provide just punishment.  I consider this a very
15 serious offense.  I do not consider it as being comparable to
16 crimes of violence that result in a death or substantial
17 physical or emotional injury.  Bad as this was, it was not of
18 the same gravity of economic crimes that literally destroy the
19 financial security and well-being of specific individuals,
20 identifiable individuals who know they've been victimized, and
21 thus bring upon those individuals not only huge material
22 effects, but an enormous emotional impact.  Everybody in this
23 room can think of a case that's in the news lately in which
24 those kinds of things could be said.  Those things can't be
25 said in this case.
SOUTHERN DISTRICT REPORTERS, P.C.
Page 35

941RLARF
8   33.   All for an aggregate term of imprisonment of 97 months.
9          That you therefore serve a term of supervised release
10  of three years, and that you pay the mandatory special
11  assessment of $1,200.   It is further adjudged that you pay a
12  fine of $3 million, the cost of prosecution of $38,392.81, cost
13  of imprisonment of $2,076.88 for each month of imprisonment,
14  and such restitution as may be required in subsequent
15  proceeding in this case.   The fine shall be payable no later
16  than June 1st, 2009.
17          The term of supervised release shall be subject to the
18  mandatory and standard conditions of supervision one through 13
19  in addition to the following special conditions:   First, you
20  shall provide the probation officer with any financial
21  information he or she may request.   Second, you shall not incur
22  new credit charges or open additional lines of credit without
23  the approval of the probation officer, unless you have paid the
24  fine imposed hereby, and are in compliance with any restitution
25  obligation that hereafter may be imposed.   Third, you are to
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                81
    9413LAR3          Sentence
1   report to the nearest probation office within 72 hours after
2   you are released from custody.   The mandatory drug testing
3   condition is suspended because I find a low risk of substance
4   abuse.   You may be seated.
5          I want to be clear that the difference in the
6   sentences between Mr. Pfaff and Mr. Larson, in addition to
7   whatever I've said previously, is attributable to two factors
8   in particular.   The first is that I have no evidence that
9   Mr. Pfaff, unlike Mr. Larson deliberately placed assets outside
10  the United States in order to avoid their being reached by
11  creditors and by the government.   The second is the difference
12  in their ages.
13         Mr. Ruble.   Mr. Ruble, it is the judgment of this
14  Court that you be committed to the custody of the attorney
15  general of the United States or his designee for a term of
16  imprisonment of 60 months on each count.   The terms to run
17  consecutively to the extent necessary to achieve a total
18  sentence of imprisonment of 78 months and otherwise
19  concurrently.
20         That you thereafter serve a term of supervised release
21  of two years.   And that you pay the mandatory special
22  assessment of $1,000.
23         The term of supervised release shall be subject to the
24  mandatory and the standard conditions of supervision one
25  through 13, in addition to the following condition:   The
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

                                                                82
    9413LAR3          Sentence
1   condition is that you are to report to the nearest probation
2   office within 72 hours after you are released from custody.
3   The mandatory drug testing condition is suspended because I
4   find a low risk of substance abuse.   You may be seated.
5          Does anybody perceive any error of law with respect to
6   the fines?   Or anything else I've done?
7          MR. SCHEPER:   Nothing to add to the papers, your
8   Honor.
9          THE COURT:   All right.   Thank you.   I advise each of
10  the defendants, each of you has the right to appeal from the
11  judgment embodied in this sentence.   If you wish to appeal, you
12  must file a written notice of appeal no later than 10 days
                           Page 38

941RLARF

```
 5   there is a nonfrivolous question on that point even though I
 6   think my judgment on it is correct.  And there is no serious
 7   argument that Mr. Ruble is a flight risk.  So he is granted
 8   bail pending appeal.
 9            Now as to Mr. Larson and Mr. Pfaff.  Again there is no
10   suggestion either one of them is a danger, so that aspect of
11   bail pending appeal is satisfied.
12            I accept Ms. Shapiro's statement of the standard as to
13   likelihood of success on appeal.  It doesn't mean more probable
14   than not that the defense will prevail on appeal.  It requires
15   only a finding on my part that there is a nonfrivolous
16   question, a close question, that very well could be decided the
17   other way inputting some element of likelihood if not a
18   probability.  United States v. Randall, 761 F.2d 122.
19            Now, Mr. Larson and Mr. Pfaff make a bunch of
20   arguments.  Ms. Shapiro has done her usual fine distinguished and
21   resourceful job of combing the record and thinking up issues
22   for appeal that include, among other things, whether I should
23   have charged that the government had to prove that there was no
24   possibility of a profit rather than merely no reasonable
25   possibility of a profit, whether the defendants had fair notice
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

105

941rkpm4                    Sentence
```
 1   of the standard to be applied, whether the evidence was
 2   sufficient to go to the jury assuming that the appropriate test
 3   was no possibility of a profit, and whether section 7201 of the
 4   code of its own force and without regard to theories of
 5   secondary liability reaches an attempt to defeat or evade the
 6   tax imposed on a person other than the defendant.  There are
 7   other issues raised.
 8            I have certainly addressed the economic substance
 9   standard in all particulars save one.  Before passing to that
10   one, I would simply note that it is very instructive to compare
11   defendants' supplemental proposed jury instruction number 7
12   with the charge I gave at pages 5227 and 5230 to 32 of the
13   transcript on economic substance because they are, save for the
14   word "reasonable," substantially identical.  That doesn't make
15   for much of an argument on appeal when the judge gives the
16   defendants' charge.
17            On the question of reasonable versus no possibility,
18   in my view the charge conformed to the Second Circuit's law,
19   including, among other things, United States v. Manko.  I note
20   that defendants tried to distinguish Manko by contending that
21   it, and for that matter Atkins, referred also to market risk.
22   The charge in this case also referred to market risk at page
23   5231 line 24 to page 5232/line 8.  I've already noted the close
24   similarity between the charge and the opinion letters.
25            So I must say that I am very strongly inclined to the
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

106

941rkpm4                    Sentence
```
 1   view that, at least insofar as the economic substance issue is
 2   concerned, the defendants perhaps have not shown a close or
 3   nonfrivolous question on appeal, particularly in view of the
 4   requested instruction they tendered and the opinion letters
 5   that they issued.
 6            That said, I don't think that tonight I need to
 7   definitively decide this question, because there is the issue
 8   of flight risk.  I am not tonight satisfied that the defendants
 9   are not likely to flee.  I could get a lot more comfortable
```

Page 49

                              941RLARF
10   with a lot more information, but I'm not there now.
11              The defendants, given the relationship that was shown
12   at trial with the Norwegians, I think quite possibly have
13   access to substantial resources abroad in the hands of others.
14   Certainly Mr. Larson has direct access.  There are millions of
15   dollars in the Converse Trust sitting on the Isle of Guernsey.
16   He has the power under Article 1.2 of the trust instrument to
17   designate all of that principal to go to, among all other
18   people his sister, Ann Malner.
19              Ms. Malner's letter to me makes perfectly clear that
20   she has high regard and affection for her brother.  The
21   likelihood in my view would be quite high that if Mr. Larson
22   took it into his head to leave the country, he would be
23   immediately put in funds to the extent of millions of dollars
24   through Ms. Malner or other family members.
25              I think there might be ways for this and other risks
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                              107
     941rkpm4              Sentence
1    to be eliminated or greatly reduced.  Certainly the possibility
2    that a very substantial additional bail package on the part of
3    Mr. Larson in which Ms. Malner and all of the other permitted
4    beneficiaries of trusts were responsible and secured by the
5    assets of those of the trusts that can be placed in the hands
6    of the permitted beneficiaries right away might do it,
7    particularly if the assets were repatriated and placed under
8    the jurisdiction of the court.
9               In the case of Mr. Pfaff, I don't fully have the
10   picture on the money in the trusts.  I have Mr. Scheper's
11   certainly good faith but not fully informed judgment as to what
12   may be in the trusts.  I certainly have never seen the trust
13   instruments.  I doubt that Mr. Scheper has, but maybe he has.
14              I'm certainly not going to do anything on this without
15   seeing the trust instruments.  I can imagine a package being
16   put together that might persuade me on the flight risk as to
17   Mr. Pfaff, who in this case has family members here that make
18   him start in a position more advantageous than Mr. Larson on
19   the issue.
20              The long and short of it is for right now I'm not
21   satisfied on flight risk, I therefore don't have to make the
22   decision on likelihood of success on appeal unless and until I
23   have an otherwise satisfactory bail package.  So the
24   applications for bail pending appeal on behalf of Mr. Larson
25   and Mr. Pfaff are denied without prejudice to renewal on
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
                                                              108
     941rkpm4              Sentence
1    further bail packages.
2               I remind everybody that at the beginning of this case
3    we went through a not dissimilar exercise with Mr. Greenberg.
4    It took some time.  Lots of documents had to be executed.  But
5    in the fullness of time Mr. Greenberg was able to satisfy me.
6               Assuming for the sake of argument that the success on
7    appeal standard can be met, as to which I haven't decided if I
8    made clear, I wouldn't be surprised if they could satisfy the
9    flight risk point.  But I'm not necessarily committed to that
10   point of view.  For now Mr. Larson and Mr. Pfaff are remanded.
11              Yes, ma'am?
12              MS. SHAPIRO:  Your Honor, I would ask the Court to
13   stay its order to give us time to apply to the Second Circuit
14   for bail pending appeal.
                              Page 50