# EXHIBIT G

# Part III. Administrative, Procedural, and Miscellaneous

## Tax Avoidance Using Artificially High Basis

## Notice 2000–44

In Notice 99–59, 1999–52 I.R.B. 761, the Internal Revenue Service and the Treasury Department described certain transactions that were being marketed to taxpayers for the purpose of generating artificial tax losses. This notice concerns other similar transactions that purport to generate tax losses for taxpayers.

As stated in Notice 99–59, a loss is allowable as a deduction for federal income tax purposes only if it is bona fide and reflects actual economic consequences. An artificial loss lacking economic substance is not allowable. See *ACM Partnership v. Commissioner*, 157 F.3d 231, 252 (3d Cir. 1998), *cert. denied*, 526 U.S. 1017 (1999) ("Tax losses such as these . . . which do not correspond to any actual economic losses, do not constitute the type of 'bona fide' losses that are deductible under the Internal Revenue Code and regulations."); *Scully v. United States*, 840 F.2d 478, 486 (7th Cir. 1988) (to be deductible, a loss must be a "genuine economic loss"); *Shoenberg v. Commissioner*, 77 F.2d 446, 448 (8th Cir. 1935) (to be deductible, a loss must be "actual and real"); § 1.165–1(b) of the Income Tax Regulations ("Only a bona fide loss is allowable. Substance and not mere form shall govern in determining a deductible loss.").

Notice 99–59 describes an arrangement that purported to give rise to deductible losses on disposition of stock by applying the rules relating to distributions of encumbered property to shareholders in order to create artificially high basis in the stock. The Service and the Treasury have become aware of similar arrangements that have been designed to produce noneconomic tax losses on the disposition of partnership interests. These arrangements purport to give taxpayers artificially high basis in partnership interests and thereby give rise to deductible losses on disposition of those partnership interests.

One variation involves a taxpayer's borrowing at a premium and a partnership's subsequent assumption of that indebtedness. As an example of this variation, a taxpayer may receive $3,000X in cash from a lender under a loan agreement that provides for an inflated stated rate of interest and a stated principal amount of only $2,000X. The taxpayer contributes the $3,000X to a partnership, and the partnership assumes the indebtedness. The partnership thereafter engages in investment activities. At a later time, the taxpayer sells the partnership interest.

Under the position advanced by the promoters of this arrangement, the taxpayer claims that only the stated principal amount of the indebtedness, $2,000X in this example, is considered a liability assumed by the partnership that is treated as a distribution of money to the taxpayer that reduces the basis of the taxpayer's partnership interest under § 752 of the Internal Revenue Code. Therefore, disregarding any additional amounts the taxpayer may contribute to the partnership, transaction costs, and any income realized or expenses incurred at the partnership level, the taxpayer purports to have a basis in the partnership interest equal to the excess of the cash contributed over the stated principal amount of the indebtedness, even though the taxpayer's net economic outlay to acquire the partnership interest and the value of the partnership interest are nominal or zero. In this example, the taxpayer purports to have a basis in the partnership interest of $1,000X (the excess of the cash contributed ($3,000X) over the stated principal amount of the indebtedness ($2,000X)). On disposition of the partnership interest, the taxpayer claims a tax loss with respect to that basis amount, even though the taxpayer has incurred no corresponding economic loss.

In another variation, a taxpayer purchases and writes options and purports to create substantial positive basis in a partnership interest by transferring those option positions to a partnership. For example, a taxpayer might purchase call options for a cost of $1,000X and simultaneously write offsetting call options, with a slightly higher strike price but the same expiration date, for a premium of slightly less than $1,000X. Those option positions are then transferred to a partnership which, using additional amounts contributed to the partnership, may engage in investment activities.

Under the position advanced by the promoters of this arrangement, the taxpayer claims that the basis in the taxpayer's partnership interest is increased by the cost of the purchased call options but is not reduced under § 752 as a result of the partnership's assumption of the taxpayer's obligation with respect to the written call options. Therefore, disregarding additional amounts contributed to the partnership, transaction costs, and any income realized and expenses incurred at the partnership level, the taxpayer purports to have a basis in the partnership interest equal to the cost of the purchased call options ($1,000X in this example), even though the taxpayer's net economic outlay to acquire the partnership interest and the value of the partnership interest are nominal or zero. On the disposition of the partnership interest, the taxpayer claims a tax loss ($1,000X in this example), even though the taxpayer has incurred no corresponding economic loss.

The purported losses resulting from the transactions described above do not represent bona fide losses reflecting actual economic consequences as required for purposes of § 165. The purported losses from these transactions (and from any similar arrangements designed to produce noneconomic tax losses by artificially overstating basis in partnership interests) are not allowable as deductions for federal income tax purposes. The purported tax benefits from these transactions may also be subject to disallowance under other provisions of the Code and regulations. In particular, the transactions may be subject to challenge under § 752, or under § 1.701–2 or other anti-abuse rules. In addition, in the case of individuals, these transactions may be subject to challenge under § 165(c)(2). See *Fox v. Commissioner*, 82 T.C. 1001 (1984). Furthermore, tax losses from similar transactions designed to produce noneconomic tax losses by artificially overstating basis in corporate stock or other property are not allowable as deductions for federal income tax purposes.

Appropriate penalties may be imposed on participants in these transactions or, as applicable, on persons who participate in the promotion or reporting of these transactions, including the accuracy-related

penalty under § 6662, the return preparer penalty under § 6694, the promoter penalty under § 6700, and the aiding and abetting penalty under § 6701.

Transactions that are the same as or substantially similar to the transactions described in this Notice 2000–44 are identified as "listed transactions" for the purposes of § 1.6011–4T(b)(2) of the Temporary Income Tax Regulations and § 301.6111– 2T(b)(2) of the Temporary Procedure and Administration Regulations. See also § 301.6112–1T, A-4. It should be noted that, independent of their classification as "listed transactions" for purposes of §§ 1.6011–4T(b)(2) and 301.6111–2T(b)(2), the transactions described in this Notice 2000–44 may already be subject to the tax shelter registration and list maintenance requirements of §§ 6111 and 6112 under the regulations issued in February 2000 (§§ 301.6111–2T and 301.6112–1T, A-4), as well as the regulations issued in 1984 and amended in 1986 (§§ 301.6111–1T and 301.6112–1T, A-3). Persons required to register these tax shelters who have failed to register the shelters may be subject to the penalty under § 6707(a) and to the penalty under § 6708(a) if the requirements of § 6112 are not satisfied.

In addition, the Service and the Treasury have learned that certain persons who have promoted participation in transactions described in this notice have encouraged individual taxpayers to participate in such transactions in a manner designed to avoid the reporting of large capital gains from unrelated transactions on their individual income tax returns (Form 1040). Certain promoters have recommended that taxpayers participate in these transactions through grantor trusts and use the same grantor trusts as vehicles to realize the capital gains. Further, although each separate capital gain and loss attributable to a portion of a trust that is treated as owned by a grantor under the grantor trust provisions of the Code (§ 671 and following) is properly reported as a separate item on the grantor's individual income tax return (see § 1.671–2(c) and the Instructions to Form 1041, U.S. Income Tax Return for Estates and Trusts), the Service and the Treasury understand that these promoters have advised that the capital gains and losses from these transactions may be netted, so that only a small net capital gain or loss is re-

ported on the taxpayer's individual income tax return. In addition to other penalties, any person who willfully conceals the amount of capital gains and losses in this manner, or who willfully counsels or advises such concealment, may be guilty of a criminal offense under §§ 7201, 7203, 7206, or 7212(a) or other provisions of federal law.

The principal authors of this notice are David A. Shulman of the Office of Associate Chief Counsel (Passthroughs and Special Industries) and Victoria S. Balacek of the Office of Associate Chief Counsel (Financial Instruments and Products). For further information regarding this notice, contact Mr. Shulman at (202) 622-3080 or Ms. Balacek at (202) 622-3930 (not toll free calls).

———————

# List of Plants, Grown in Commercial Quantities in the United States, Having a Preproductive Period in Excess of Two Years Based on the Nationwide Weighted Average Preproductive Period for Such Plant

## Notice 2000–45

### PURPOSE

This notice provides guidance to taxpayers engaged in the trade or business of farming in determining whether a plant has a preproductive period in excess of 2 years for purposes of § 263A(d) of the Internal Revenue Code. This guidance is derived from the nationwide weighted average preproductive period for various plants grown in commercial quantities in the United States.

### BACKGROUND

Section 263A requires generally that the direct costs and an allocable share of indirect costs of real or tangible personal property produced by a taxpayer be capitalized. Under § 263A, taxpayers generally are required to capitalize the costs of producing property in a farming business (including animals and plants without regard to the length of their preproductive period).

Sections 263A(d) and (e) set forth special rules for property produced in the

trade or business of farming. Under § 263A(d)(1) and § 1.263A–4(a)(2) of the Income Tax Regulations, taxpayers neither required by § 447 to use an accrual method nor prohibited by § 448(a)(3) from using the cash method ("qualified taxpayers") are not required to capitalize the costs of producing plants that have a preproductive period of 2 years or less or animals. In addition, under § 263A(d)(3) and § 1.263A–4(d), a qualified taxpayer may elect to have § 263A not apply to the cost of producing plants in a farming business. Thus, unless an election is made to have § 263A not apply in accordance with § 263A(d)(3), qualified taxpayers generally are required to capitalize the costs of producing plants that have a preproductive period in excess of 2 years.

Section 263A(e)(3)(B) and § 1.263A–4(b)(2)(i)(B) provide that, for purposes of determining whether a plant has a preproductive period in excess of 2 years, the preproductive period of plants grown in commercial quantities in the United States must be based on the nationwide weighted average preproductive period for such plants. The legislative history of § 263A explains that Congress expected the Treasury Department to periodically publish a list of the preproductive periods of various plants based on the nationwide weighted averages for such plants. See H.R. Rep. No. 426, 99th Cong., 1st Sess. 628 (1985), 1986–3 (Vol. 2) C.B. 628. A proposed list was included in the preamble of the proposed § 1.263A–4 regulations (62 FR 44542). The Internal Revenue Service and Treasury Department received and considered comment letters relating to this proposed list.

Based upon information provided by the United States Department of Agriculture, the Service Treasury Department have determined that plants producing the following crops or yields have a nationwide weighted average preproductive period in excess of 2 years:

almonds, apples, apricots, avocados, blackberries, blueberries, cherries, chestnuts, coffee beans, currants, dates, figs, grapefruit, grapes, guavas, kiwifruit, kumquats, lemons, limes, macadamia nuts, mangoes, nectarines, olives, oranges, papayas, peaches, pears, pecans, persimmons, pistachio nuts, plums, pomegranates, prunes, raspberries, tangelos, tangerines, tangors, and walnuts.