1 MELINDA L. HAAG
United States Attorney
2 450 Golden Gate Avenue, Box 36055
San Francisco, CA 94102
3
JAMES E. WEAVER
4 ADAIR F. BOROUGHS
Trial Attorneys, Tax Division
5 U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
6 Washington, D.C.  20044-0683
Telephone: (202) 305-4929
7 james.e.weaver@usdoj.gov
adair.f.boroughs@usdoj.gov
8
*Attorneys for the United States of America*
9

10

11                 IN THE UNITED STATES DISTRICT COURT FOR THE

                         NORTHERN DISTRICT OF CALIFORNIA
12

13 | JOHN LARSON | ) |
| | ) NO.  C 11-03093-WHA |
14 | | ) |
| **Plaintiff,** | ) **DECLARATION OF** |
15 | | ) **GEORGE TERPACK** |
| v. | ) |
16 | | ) |
| UNITED STATES OF AMERICA, | ) |
17 | | ) |
| **Defendant.** | ) |
18 | | ) |

19

20      I, George Terpack, declare as follows:

21      1.      I am currently employed by the Internal Revenue Service (IRS) as a Revenue

                Agent, with a post of duty in Coos Bay, Oregon.
22
        2.      I have been employed by the IRS for almost 30 years.
23
        3.      In the course of my duties, I was assigned to work on the jeopardy assessment
24
                made against John Larson ("the taxpayer") on February 7, 2011.
25
        4.      I am competent to testify in the above-captioned matter because of my work on
26
                the jeopardy assessment and related matters.
27
        5.      As part of my review of information pertaining to the assessments, I understand
28
                that Mr. Larson, and his colleague Robert Pfaff, left KPMG, an accounting firm,

                                                1

to establish Presidio Advisors LLC (and related entities) on or around 1997.

6. As part of my review of information pertaining to the assessments, I understand that Presidio's near-exclusive business was the design, marketing, and execution of individual tax shelters, primarily in conjunction with KPMG.

7. Over the course of approximately three years, various Presidio-related entities took in hundreds of millions of dollars in fees for executing these tax shelters, yielding tens of millions of dollars in profits directly and indirectly to Larson and Pfaff.

8. I attach as **Exhibit A** a copy of a personal balance sheet for John Larson that is found in the relevant IRS administrative files. The balance sheet reflects that Mr. Larson had a net worth of $21,780,000 as of January 31, 2000.

9. One of the tax shelters designed and promoted by Presidio was known by the acronym "BLIPS." The BLIPS shelter was designed to generate a purported tax loss without generating any corresponding economic loss. The purported losses were generated by assigning an inflated tax basis to a taxpayer's partnership interest (through misuse of tax rules governing the assumption of liabilities).

10. BLIPS was one of a number of abusive schemes that purported to create tax basis through the used of certain types of liabilities that were assumed by partnerships (or other) entities. Upon the sale of an asset with an inflated basis, the taxpayer would report a large tax loss.

11. Mr. Larson did not pay income tax on the millions that he earned through his promotion of abusive tax shelters. Instead, he sheltered millions of dollars of income through his own personal participation (direct and indirect) in a series of abusive tax shelters during the tax years at issue: 1998, 1999, 2000 and 2001.

12. The Government eventually discovered the tax shelter schemes that Larson and his colleagues had designed and promoted, and the IRS initiated audits of Larson and several of the business entities through which Larson promoted tax shelters and sheltered his own substantial income. Although the IRS gathered some information from Mr. Larson and his entities, the investigation was frozen in 2004

upon the commencement of a criminal investigation of Mr. Larson's activities.

13. It is my understanding that the suspension of an IRS civil audit during the pendency of a criminal investigation helps to ensure that a taxpayer's Fourth Amendment and Fifth Amendment rights are not inadvertently violated during the course of a civil investigation.

14. Upon learning of the impending and likely refund to Mr. Larson of $3,000,0000 by the trial court, the IRS undertook a review process that led to the issuance of a Notice of Jeopardy Assessment to Mr. Larson on February 7, 2011 and a Notice of Levy (with respect to the pending refund) on February 8, 2011.

15. The grounds for the making of the jeopardy assessments are contained in the Notice of February 7, 2011.

16. As articulated in the Notice of Jeopardy Assessment, Mr. Larson owes in excess of $10 million in unpaid income tax liabilities, and an additional $9 million in interest, for tax years 1998-2001, mostly related to his participation in abusive tax shelter schemes.

17. Subsequent to the issuance of the notices, the IRS has undertaken an additional examination of the tax years at issue. On April 4, 2011, the IRS issued a statutory notice of deficiency to Mr. Larson that explains the bases for not only the jeopardy assessments but also additional income tax deficiencies and $8,293,033.30 in fraud and negligence penalties that Mr. Larson owes. The notice of deficiency is attached as **Exhibit B**.

18. The Notice of Deficiency for the 1998 year determined that the taxpayer failed to report the following amounts:

a. Ordinary income of $345,935 as a flow-through that resulted from the disallowance of a $11,881,813 loss on sale of equipment held by Presidio Advisors, LLC, a TEFRA entity;

b. Ordinary dividend income of $36,370 that flowed through from Prevad, Inc., an S-corporation;

c. Ordinary income of $3,450,170 that flowed through from Prevad, Inc., an S-

3

corporation; and

d.    Net short-term capital gain $922,064 that flowed through to the taxpayer from JL Investment Trust, his trust, which had participated in a so-called "Son of Boss" transaction.

19.    The $922,064 addition to income arises out of Larson's personal participation in an abusive Son-of-Boss shelter sham transaction.

20.    The $36,370 and the $3,450,170 additions to income from Prevad, Inc. arise out unreported income to the company.

21.    The Notice of Deficiency for the 1999 year determined that the taxpayer failed to report the following amounts:

a.    Ordinary income of $8,915,329 as a distributive share that flowed through from Morley Inc., an S-corporation that had allocated its income to a disallowed ESOP;

b.    Ordinary income of $8,736,866 as a result of directly engaging in a corporate "BLIPS" transaction, which Mr. Larson engaged in through JL Investment Trust;

c.    Ordinary income of $1,124,749 that flowed through from Presidio Resources, LLC, a TEFRA partnership that had entered into "BLIPS" transactions, as a result of disallowed expenses claimed by Presidio Resources, LLC; and

d.    Ordinary income of $2,275,000 that the taxpayer received from Norwood Holding, Inc. into his bank account;

22.    The $8,915,329 addition to income from Morley, Inc. arises out of Larson's personal participation in an abusive scheme to defer income into future tax years and to convert ordinary income into capital gains.

23.    The $8,736,866 addition to income arises out of Larson's personal participation in an abusive BLIPS sham transaction arising out the sale of Prevad stock which had an inflated basis.

24.    The Notice of Deficiency for the 2000 year determined that the taxpayer failed to report the following amounts

a.    Net capital gain of $2,114,443, as the result of a disallowed net short-term capital loss that flowed through from Torpre, Inc. as a result of Torpre, Inc.'s

4

1   participation in a "Son of Boss" transaction; and a long-term capital loss that

2   flowed through from the sale of Prevad.

3   b.   Ordinary income of $4,265,220, as a distributive share that flowed through from

4        Morley Inc., an S-corporation that had allocated its income to a disallowed ESOP;

5        and

6   c.   Ordinary income of $683,016 that flowed through from Presidio Resources, LLC,

7        a TEFRA partnership that had entered into a "BLIPS"-type "Son of Boss"

8        transaction.

9   25.  The $2,114,443 addition to income arises out of Larson's personal participation in

10       two abusive BLIPS sham transactions.

11  26.  The $4,265,220 addition to income from Morley, Inc. arises out of Larson's

12       personal participation in an abusive scheme to defer income into future tax years

13       and to convert ordinary income into capital gains.

14  27.  The Notice of Deficiency for the 2001 year determined that the taxpayer failed to

15       report the following amounts:

16  a.   Ordinary income of $6,750 that flowed through from Octavia Capital, LLC, a

17       TEFRA entity;

18  b.   Net capital gain of $598,456, as the result of a disallowed capital loss carryover

19       from the taxpayer's Form 1040 for the 1999 tax year;

20  c.   Ordinary income of $2,790,737 as a distributive share that flowed through from

21       Morley Inc., an S-corporation that had allocated its income to a disallowed ESOP.

22  28.  The $2,790,737 addition to income from Morley, Inc. arises out of Larson's

23       personal participation in an abusive scheme to defer income into future tax years

24       and to convert ordinary income into capital gains.

25  29.  I have sent out several summonses to financial institutions requesting documents.

26       I attach copies of information obtained as **Exhibit C**. In the case of the

27       information provided by Wells Fargo Bank on a CD ROM, I have attached the

28       most recent account statements.

1   I declare under penalty of perjury that the foregoing is true and correct.

2                                        George J.          Digitally signed by George J. Terpack, Jr.
                                         Terpack, Jr.       DN: cn=George J. Terpack, Jr., email=George.
                                                            J.Terpack@irs.gov, o=CTM 1747, ou=LMSB,
                                                            c=US
                                                            Date: 2011.07.08 06:16:08 -07:00

3                                        _____
                                         George Terpack
                                         IRS Revenue Agent

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28