IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LARSON, | No. C 11-03093 WHA |
| Plaintiff, | |
| v. | **ORDER UPHOLDING JEOPARDY ASSESSMENT AND JEOPARDY LEVY** |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

## INTRODUCTION

In this tax action, plaintiff requests summary review of a jeopardy assessment and a jeopardy levy made by the Internal Revenue Service. For the reasons stated below, this order upholds the jeopardy assessment and the jeopardy levy.

## STATEMENT

This summary review action arises in the wake of a tax-evasion prosecution said to be "the largest criminal tax case in American history." *United States v. Pfaff*, 619 F.3d 172, 173 (2d Cir. 2010). In approximately 2002, the Internal Revenue Service initiated an audit of plaintiff John Larson's federal tax returns for the years 1998–2001 (Compl. ¶ 5). The civil audit proceedings were frozen in 2004 when a criminal investigation involving Mr. Larson's tax history was opened (Terpack Decl. ¶ 12). The following year, Mr. Larson and eighteen others were charged with a tax-evasion conspiracy involving the promotion of three alleged tax-shelter schemes (Compl. ¶ 7). In December 2008, following a ten-week jury trial, Mr. Larson was

convicted of twelve counts of tax evasion for designing, implementing, and marketing fraudulent tax shelters (Compl. ¶ 8). *Pfaff*, 619 F.3d at 173–74. In April 2009, Mr. Larson was sentenced to 121 months of imprisonment and was fined six million dollars. Mr. Larson was immediately remanded into custody and remains incarcerated. He paid the fine in July 2009 (Compl. ¶ 10).

The six-million-dollar fine was based in part on a finding made by the district court at the sentencing hearing that Mr. Larson had caused a "gross pecuniary loss" in excess of $100 million (Weaver Exh. C). *Pfaff*, 619 F.3d at 174. On appeal, the fine was vacated. The court of appeals held that the district court could rely only on facts found *by the jury* in order to increase a criminal fine beyond the statutory maximum. Here, the jury made no findings as to the pecuniary gain or loss caused by Mr. Larson's conduct, and the statutory maximum absent such findings was three million dollars. *Pfaff*, 619 F.3d at 174–75. The issue of the fine was remanded to the United States District Court for the Southern District of New York in August 2010 (Compl. ¶ 11–12). *Pfaff*, 619 F.3d at 176. The parties anticipate that the New York district court will issue Mr. Larson a refund of approximately three million dollars (Compl. ¶ 20; Resp. 6).

Upon learning of the imminent refund, the IRS reinvigorated its civil pursuit of Mr. Larson (Resp. 6). On February 7, 2011, the IRS issued a notice of jeopardy assessment against Mr. Larson, assessing more than $20 million in taxes and interest owed for the years 1998–2001 (Compl. Exh. 1). The following day, the IRS issued a notice of jeopardy levy in conjunction with the jeopardy assessment (Compl. Exh. 3). The IRS served the levy on the clerk of court for the New York district court where Mr. Larson was tried, seeking to intercept the expected three-million-dollar refund (Compl. ¶ 20).

Mr. Larson timely protested the jeopardy assessment and jeopardy levy to the IRS (Compl. Exh. 4). After exhausting his administrative remedies, he timely filed this action for summary judicial review. Venue is proper here because Mr. Larson resided in this district at all relevant times (Compl. ¶ 3).

Mr. Larson contends that neither the jeopardy assessment nor the jeopardy levy was reasonable under the circumstances, and that the amount of the assessment was not appropriate under the circumstances. The controlling statute mandates summary determination of these

questions on an expedited basis. 26 U.S.C. 7429(b)(3). Accordingly, this order follows consideration of the complaint and supporting documents, and an expedited response from the government.

## ANALYSIS

Within twenty days after the filing of an action for summary judicial review, the district court must make the following determinations: (1) whether the making of the jeopardy assessment is reasonable under the circumstances; (2) whether the jeopardy levy is reasonable under the circumstances; and (3) whether the amount of the jeopardy assessment is appropriate under the circumstances. 26 U.S.C. 7429(b)(3).

### 1.   REASONABLENESS OF ASSESSMENT AND LEVY.

The government bears the burden of showing that a jeopardy assessment or a jeopardy levy is reasonable under the circumstances. 26 U.S.C. 7429(g)(1). Here, the government has carried its burden.

Tax assessments and levies typically must comply with notice procedures. 26 U.S.C. 6213(a), 6331(d). Under certain circumstances, however, the notice requirements are suspended. If the IRS believes that the assessment or collection of a tax deficiency will be jeopardized by delay, then it shall immediately assess such deficiency. 26 U.S.C. 6861(a). If the IRS finds that the collection of a tax is in jeopardy, then a levy may be made without notice. 26 U.S.C. 6331(d)(3).

The Treasury Regulations set forth three conditions that would justify a determination that collection of a tax is in jeopardy:

> (i) The taxpayer is or appears to be designing quickly to depart from the United States or to conceal himself or herself.
>
> (ii) The taxpayer is *or appears to be* designing quickly to place his, her, or its property beyond the reach of the Government either by removing it from the United States, by concealing it, by dissipating it, or by transferring it to other persons.
>
> (iii) The taxpayer's financial solvency is or appears to be imperiled.

26 C.F.R. 1.6851-1(a)(1) (emphasis added). Courts conducting summary review pursuant to Section 7429 generally find jeopardy assessments and jeopardy levies to be reasonable if any

3

one of these conditions is present. *McWilliams v. Comm'r of Internal Revenue*, 103 T.C. 416, 424 (1994).

Here, the circumstances justified a determination that Mr. Larson appeared to be designing to place the expected three-million-dollar refund beyond the government's reach. It bears repeating that *Mr. Larson has been convicted of tax evasion*. He made a profitable business out of designing, implementing, and marketing complex tax-evasion schemes, and he used foreign entities to shelter his profits. *See Pfaff*, 619 F.3d at 174. After the IRS examined and disallowed one of Mr. Larson's tax-evasion strategies, Mr. Larson transferred millions of dollars to his trusts in the Bailiwick of Guernsey, where the money could not be reached by the United States government. The district judge who heard Mr. Larson's criminal case found this transfer to be "a brazen act" justifying an increase in his sentence (Weaver Exh. C at 73:8–14). That judge also found the trial evidence to show that Mr. Larson had continuing relationships with foreign nationals who helped him hide funds abroad (*id.* at 106:11–18). Mr. Larson recently admitted that he still owns foreign trusts (Hockett Decl. ¶ 8). In short, the record shows that Mr. Larson has the resources, the know-how, and the gall to continue hiding his money from the United States or placing it beyond the government's reach. The determination by the IRS that Mr. Larson's expected three-million-dollar refund might well disappear as soon as it is remitted to him was reasonable under these circumstances.

The fact that Mr. Larson currently is incarcerated does not alter this analysis. Even from prison, he can communicate instructions to loyal confederates with control over his assets. Mr. Larson's other arguments are unavailing as well. For example, he argues that "[t]he majority" of his dispute with the IRS relates only to "the appropriate timing for him to have reported certain income; not whether he failed to report the income at all" (Compl. ¶ 17). This argument candy-coats Mr. Larson's crimes. Finagling the timing for recognizing gains so that they could be off-set by bogus losses was a key feature of his deliberate tax-evasion schemes. Similarly, Mr. Larson argues that the assessment "include[s] partnership adjustments that are currently (and appropriately) being litigated in the Court of Federal Claims" (*ibid.*). The

4

assessment and levy, however, do not impair his ability to challenge and resolve that portion of his tax liability through litigation.

Mr. Larson also claims that he has been forthright with the government concerning his assets, supposedly having turned over a new leaf after he was caught (Compl. ¶ 29). The record contradicts this assertion. For example, his response to a document request issued by the IRS in conjunction with its continuing investigation is several months overdue (Banks Decl. ¶¶ 5–9). Similarly, during the administrative review of the jeopardy assessment and levy, he did not provide requested documentation regarding his assets within the reach of the United States government (Hockett Decl. ¶ 7; Hockett Exh. A). Mr. Larson's net worth exceeded $21 million in January 2000, but only a small fraction of that wealth is accounted for in the present assets he has disclosed to the government (Terpack Exh. A; Resp. 16–17). In sum, this order finds that the jeopardy assessment and the jeopardy levy were reasonable procedural measures under the circumstances.

### 2. APPROPRIATENESS OF AMOUNT.

The taxpayer bears the burden of showing that the amount of a jeopardy assessment was not appropriate under the circumstances. 26 U.S.C. 7429(g)(2). Here, plaintiff-taxpayer has not carried his burden. The notice of deficiency provided to Mr. Larson set forth a detailed explanation of the amounts assessed against him, and he has not shown any of those amounts to be inaccurate or unsupported (Terpack Exh. B).

*First*, Mr. Larson argues that the pendency of his lawsuits in the Court of Federal Claims renders some of the assessed adjustments "premature and inappropriate" (Compl. ¶ 32). He does not, however, cite any authority for this pronouncement. The relevant portion of his tax liability should be reduced only if and when he prevails in those challenges. *Second*, Mr. Larson emphasizes that many of the assessed adjustments relate to timing rather than a complete failure to report income (*ibid.*). As above, this argument misses the point. *Third*, Mr. Larson makes conclusory statements that the assessment includes "double taxation" and that the interest portion of the assessment is "demonstrably incorrect," but he provides no documentation or analysis to support these claims. *Fourth*, Mr. Larson claims entitlement to an abatement of interest, but the

5

statute he cites does not apply to cases involving fraud. 26 U.S.C. 6404(g)(2)(b). All of Mr. Larson's challenges fail. Accordingly, this order finds that the amount of the jeopardy assessment was appropriate under the circumstances.

## CONCLUSION

For the foregoing reasons, this order finds that the jeopardy assessment and the jeopardy levy were reasonable under the circumstances, and that the amount of the assessment was appropriate under the circumstances. No abatement of the assessment or release of the levy is required. Judgment will be entered in favor of defendant and against plaintiff.

**IT IS SO ORDERED.**

Dated: July 11, 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

6